**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MARK PASSUT,
c/o Democracy Forward Foundation
1333 H Street NW
Washington, DC 20005, and

MARK KAISER,
c/o Democracy Forward Foundation
1333 H Street NW
Washington, DC 20005, on behalf of
themselves and all others similarly situated,

      *Plaintiffs*,

    vs.

BETSY DEVOS, in her official capacity as
    U.S. Secretary of Education,
400 Maryland Avenue, SW
Washington, DC 20202, and

U.S. DEPARTMENT OF EDUCATION,
400 Maryland Avenue, SW
Washington, DC 20202,

      *Defendants.*

Case No.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# TABLE OF CONTENTS

JURISDICTION AND VENUE ............................................................................ 4

PARTIES ......................................................................................................... 5

FACTUAL ALLEGATIONS ................................................................................. 5

    I.     How The Department Of Education Regulates Accreditors ................................. 5

    II.    ACICS's History Of Failing To Supervise For-Profit Colleges. ........................... 9

    III.   The Department Withdraws ACICS's Recognition in 2016 ................................ 13

    IV.   The Court Remands ACICS's Recognition To The Department ......................... 17

    V.    Secretary DeVos Unlawfully Restores ACICS's Recognition On
            An Interim Basis. ............................................................................ 20

    VI.   Secretary DeVos Restores ACICS's Recognition On A Final Basis ................... 25

    VII.  DeVos's Interim Recognition Order Unlawfully Allowed Virginia
            College And Other ECA Schools To Receive Thousands Of
            Improperly Issued Loans As They Collapsed. ..................................... 32

CLASS ACTION ALLEGATIONS ..................................................................... 35

CLAIMS FOR RELIEF .................................................................................... 37

    Count One (Violation of the Administrative Procedure Act,
        5 U.S.C. § 706(2)(A), (C)) ............................................................... 37

    Count Two (Violation of the Administrative Procedure Act,
        5 U.S.C. § 706(2)(A), (D)) ............................................................... 39

REQUEST FOR RELIEF ................................................................................. 40

Plaintiffs Mark Passut and Mark Kaiser hereby sue Defendants Betsy DeVos, in her official capacity as U.S. Secretary of Education, and the U.S. Department of Education, and allege as follows:

1. This case involves Secretary Betsy DeVos's decision on behalf of the Department of Education to cast aside law and governing regulations to put the Accrediting Council of Independent Colleges and Schools (ACICS), a troubled accreditor of predatory for-profit colleges, back in business—to the detriment of students and their families. Two of those students were Mr. Passut and Mr. Kaiser, who attended ACICS-accredited Virginia College in Fall 2018 when, absent the Secretary's unlawful decision, the school would have lost its accreditation and its eligibility to participate in federal student aid programs. As has been the case with other schools that ACICS accredited, Virginia College collapsed before the end of the term, preventing Mr. Passut and Mr. Kaiser—and their fellow students—from finishing their coursework but saddling them with substantial student loan debt.

2. ACICS's relationship with Virginia College continued its pattern of accrediting many of the nation's worst for-profit colleges, including campuses of the since-collapsed Corinthian Colleges and ITT Educational Services chains. Accreditation is essential to any educational institution: along with serving as a marker of the institution's quality and legitimacy, it is a prerequisite to receiving federal student aid money. In December 2016, after a painstaking review of ACICS's performance by Department staff and an independent panel, then-Secretary of Education John King withdrew ACICS's recognition as an accreditor in light of its "pervasive noncompliance" with federal requirements. As a result, colleges accredited by ACICS had 18 months to find a new accreditor; if they failed to do so, they would become ineligible for federal

student aid and the Department would be prohibited from issuing loans to students to pay tuition and expenses to attend them.

3. ACICS challenged the Department's decision in this Court, leading to a March 23, 2018 order remanding the matter to the Department with instructions to consider certain evidence that ACICS had submitted to the Department past its deadline. The Court expressly stated it was not passing judgment on the substance of the Department's decision. Nor, crucially, did the Court grant ACICS's request to vacate the decision, instead leaving it intact while the Department considered the new evidence. The Court's decision therefore ensured that the Department could weigh the evidence in a deliberate, thoughtful manner, without putting students at risk in the interim period by allowing ACICS to continue accrediting schools before the Department concluded it could do so in compliance with federal requirements.

4. On April 3, 2018, however, Secretary DeVos issued a two-page order purporting to render Secretary King's decision null and void, notwithstanding that just one month beforehand, Department staff had found that ACICS remained non-compliant with the majority of the accreditor recognition criteria. Even though the Court remanded without vacating the Department's decision, Secretary DeVos used the Court's order as a pretext to sweep the decision away entirely. Secretary DeVos's decision ignored fundamental principles of administrative law and, just as importantly, failed to consider the interests of students who might be misled into enrolling at ACICS-accredited schools while the Department took its time considering whether to again recognize ACICS. As a consequence of Secretary DeVos's decision, schools accredited by ACICS continued to receive federal student aid beyond their 18-month grace period, which would have expired on June 12, 2018.

5.     Secretary DeVos's unreasoned decision was based on a fundamental misinterpretation of the effect of the Court's order and violated the Administrative Procedure Act. The hasty, unsupported action by Secretary DeVos and her senior advisor regarding post-secondary education, Diane Auer Jones, is emblematic of their favoritism of for-profit colleges and corresponding laxity towards accreditors, regardless of what the law provides. Both have expressed deep skepticism of the Department's oversight of for-profit colleges; Secretary DeVos has asserted that "[t]he Department of Ed has overstepped in areas in trying to do things that really are best left to accreditors," while also arguing that the recognition process is too onerous for accreditors. Their involvement in the Department's decisions regarding ACICS gives rise to the appearance—at least—that those decisions were unlawfully biased in favor of ACICS, in violation of the APA, ethics regulations, and the Due Process Clause of the Constitution.

6.     Defendants' decision had predictably devastating consequences for thousands of students. The April 2018 re-recognition of ACICS meant that colleges accredited by ACICS did not need to convince a different accreditor of their viability. This included 70 schools operated by Education Corporation of America (ECA), including its Virginia College chain. At the time Secretary DeVos reversed ACICS's derecognition, no other accreditor would accredit Virginia College. Virginia College sought accreditation from a different accreditor, the Accrediting Council for Continuing Education & Training (ACCET), but ACCET found in May 2018 that its schools did not meet federal standards and showed signs of collapse. However, due to the Secretary's April 2018 decision, Virginia College was able to turn back to ACICS to provide accreditation. Virginia College therefore continued enrolling students for the fall—and the Department continued to issue debt to those students. But the Department's unlawful reprieve

was short-lived: in December 2018, before the term was completed, Virginia College shut its doors, leaving students with thousands of dollars in debt and nothing in exchange.

7.     Named Plaintiffs here, Mr. Passut and Mr. Kaiser, were two of the students who paid that price, along with thousands of other ECA students. Both Plaintiffs remained enrolled in Virginia College for the Fall 2018 term to continue pursuing degrees as occupational therapy assistants. The Department of Education gave them substantial federal loans to do so. When Virginia College and ECA's other schools abruptly closed, students were unable to earn the credits for which they had worked and paid, but their debt remained. In other words, Defendants' decision gave Virginia College a lifeline that no accreditor properly recognized by the Department could or would provide—and left Plaintiffs with debts for the Fall 2018 term that they should not and do not properly owe.

8.     For these reasons, and as described more fully below, the Court should certify a Class of individuals to whom the Department issued loans for tuition and expenses at ECA schools after June 12, 2018; hold that Secretary DeVos's April 3 order was unlawful and vacate that order; and declare that any loans issued based on the April 3 order are similarly unlawful, vacate those loans, and enjoin the Department from attempting to collect them.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law.

10.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) because Defendants are an officer and an agency of the United States and are located in the District of Columbia.

## PARTIES

11.     Plaintiff Mark Passut resides in Aylett, Virginia. Mr. Passut studied to become an occupational therapy assistant at Virginia College prior to its closure in December 2018. He took on approximately $4,324 in Department-issued debt for tuition and expenses at Virginia College for the Fall 2018 term, including interest that has since accrued. He currently owes $24,970 for his studies at Virginia College. Mr. Passut has now had to re-enroll at another school and pay additional tuition and expenses, delaying his degree and employment in the field.

12.     Plaintiff Mark Kaiser resides in Richmond, Virginia. Mr. Kaiser studied to become an occupational therapy assistant at Virginia College prior to its closure in December 2018. He took on $3,558 in Department-issued debt to pay tuition and expenses at Virginia College for the Fall 2018 term, including interest that has since accrued. He currently owes $24,904 for his studies at Virginia College. Mr. Kaiser has now had to re-enroll at another school and pay additional tuition and expenses, delaying his degree and employment in the field.

13.     Defendant Betsy DeVos is sued in her official capacity as U.S. Secretary of Education.

14.     Defendant the U.S. Department of Education is a federal agency headquartered in Washington, DC, at 400 Maryland Avenue, SW, Washington, D.C. 20202.

## FACTUAL ALLEGATIONS

### I.      How The Department Of Education Regulates Accreditors

15.     Institutions of higher education have long been overseen by a so-called "triad" of entities: the federal Department of Education, state regulators, and private accrediting agencies. Responsibility is shared "among accrediting agencies, States, and the Federal government" to ensure that access to programs under Title IV of the Higher Education Act of 1965, 20 U.S.C.

§ 1070 *et seq.*, is only available "to those institutions that provide students with quality education or training worth the time, energy, and money they invest in it."[1]

16.     As part of this regulatory scheme, the Department has established a mechanism for "recogniz[ing] accrediting agencies to ensure that these agencies are … reliable authorities regarding the quality of education or training offered by the institutions or programs they accredit." 34 C.F.R. § 602.1. Given that "the character and quality of [institutions of higher education's] programs can vary widely," accreditation helps to "ensure a level of acceptable quality across the wide array of programs and institutions in higher education."[2]

17.     Accreditation is essential to schools for several reasons. Most importantly, "[a]ccreditation … is a prerequisite to Title IV funding and it provides assurance that the federal loans and grants are awarded to students who will get the education for which they are paying." *Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Schs. & Colls.*, 781 F.3d 161, 170 (4th Cir. 2015); *see* 20 U.S.C. § 1002(b)(1)(D). Many states and licensing bodies also require that institutions receive accreditation to operate within the state, to access state-based student aid programs, or to fulfill eligibility criteria for certain state-based licenses and certifications. Finally, accreditation "signals whether a school offers a quality education," allowing it to attract enrollees and market its graduates to prospective employers.[3]

---

[1]     *See generally* Secretary's Procedures and Criteria for Recognition of Accrediting Agencies, 59 Fed. Reg. 22,250, 22,250 (Apr. 29, 1994).

[2]     Alexandra Hegji, Cong. Research Serv., R43826, An Overview of Accreditation of Higher Education in the United States 1 (Mar. 23, 2017), https://fas.org/sgp/crs/misc/R43826.pdf.

[3]     Ted Mitchell, *Letter to Students at ACICS Accredited Schools*, U.S. Dep't of Educ. (Dec. 12, 2016) [hereinafter Mitchell Letter], https://blog.ed.gov/2016/12/letter-to-acics-students/.

18. The process by which an accreditor can become federally recognized or extend its federal recognition is laid out in 20 U.S.C. § 1099b and its implementing regulations, found at 34 C.F.R. §§ 602.1 *et seq*. Briefly summarized, that process includes the following steps:

    a.    An accreditor files an application for recognition and any supporting evidence with the Department. 34 C.F.R. § 602.31(a).

    b.    The Department posts a notice of the application in the Federal Register and invites public comment. *Id.* § 602.32(a).

    c.    The Department prepares a draft "staff report" recommending a disposition of the application, to which the accreditor is allowed to respond before the report is finalized. *Id.* § 602.32(f).

    d.    The application, report, public comments, and other materials are submitted to an independent advisory committee, the National Advisory Committee on Institutional Quality and Integrity (NACIQI),[4] which holds a public hearing to discuss the application and then provides its own recommendation. *Id.* § 602.34.

    e.    Based on the submissions and recommendations, the "senior Department official" (SDO), an official designated by the Secretary, renders a written decision on whether to recognize the accreditor. *Id.* § 602.36.

    f.    If the SDO elects not to recognize the accreditor, the accreditor may appeal their decision to the Secretary, who conducts a de novo review of the entire record before making a final decision. *Id.* § 602.37(a)-(d).

---

[4] NACIQI is an advisory committee established by federal law "to assess the process of accreditation and the institutional eligibility and certification of institutions of higher education." 20 U.S.C. § 1011c.

19. The regulations also establish substantive criteria that an accreditor must meet to receive recognition from the Department. *Id.* § 602.1(b). The most important of these require the accreditor to demonstrate that its standards are "sufficiently rigorous" to ensure that its accreditation decisions are a reliable barometer of institutional quality (*id.* § 602.16); that it has "effective mechanisms" for evaluating individual institutions (*id.* § 602.17); that it applies its standards consistently (*id.* § 602.18); that it sufficiently monitors the institutions it accredits (*id.* § 602.19); that it promptly initiates enforcement action against noncompliant institutions (*id.* § 602.20); and that it reviews its own standards on a regular basis (*id.* § 602.21). There are also criteria governing an accreditor's administrative and fiscal capability (*id.* § 602.15) as well as its internal operating procedures (*id.* §§ 602.22-28).

20. Importantly, "if the agency either fails to comply with the criteria for recognition … , or to apply those criteria effectively, the senior Department official denies, limits, suspends, or terminates recognition." 34 C.F.R. § 602.36(e)(2)(i). Only if "the senior Department official concludes that the agency will demonstrate or achieve compliance with the criteria for recognition and effective application of those criteria within 12 months or less" can the SDO continue the agency's recognition, which is limited to 12 months absent "extraordinary circumstances." *Id.* § 602.36(e)(3).

21. If the Secretary, or the senior Department official acting as the Secretary, "withdraws the recognition of any accrediting agency, … the Secretary may, notwithstanding the withdrawal, continue the eligibility of the institution of higher education[s]" accredited by that agency for federal student aid programs "for a period not to exceed 18 months from the date of the withdrawal of recognition." 20 U.S.C. § 1099c. As the Department explained in its letter notifying institutions of its withdrawal of ACICS's recognition, "[i]nstitutions that fail to meet

the statutory deadline … lose Title IV eligibility."[5] During that time period, schools must also post notices informing students about their loss of recognized accreditation.[6]

22.     If the senior Department official or the Secretary on appeal do "not reach a final decision to approve, deny, limit, suspend, or terminate an agency's recognition before the expiration of its recognition period," they "automatically extend[] the recognition period until a final decision is reached." 34 C.F.R. §§ 602.36(i), 602.37(h).

23.     If a terminated accreditor appeals the senior Department official's decision to the Secretary, the appeal "stays the decision of the senior Department official until final disposition of the appeal" by the Secretary. *Id.* § 602.37(a). However, "a decision of the Secretary to deny, limit, suspend, or terminate the agency's recognition is not stayed during an appeal in the Federal courts." *Id.* § 602.38.

## II.     ACICS's History Of Failing To Supervise For-Profit Colleges.

24.     The Department first recognized ACICS in 1956 under the agency's former name, the Accrediting Commission for Business Schools. The Department continued ACICS's recognition in 2011 for an additional five years.

25.     By ACICS's next five-year review in 2016, however, it had become clear that ACICS was wholly failing to meet federal standards and its responsibilities to the students at the schools it accredited.

---

5     Letter from Lynn B. Mahaffie, Acting Ass't Sec'y for Postsecondary Educ., to Colleagues 1 (Dec. 12, 2016) [hereinafter Dear Colleague Letter], https://ifap.ed.gov/eannouncements/attachments/121316LetterToACICSInstitutionsAccredited.pdf.

6     *See* Adam Harris, *DeVos's Education Dept. Relaxed Rules for For-Profits Under Accreditor that Closed*, Chron. of Higher Educ. (Feb. 7, 2018), https://www.chronicle.com/article/DeVos-s-Education-Dept/242471.

26.     According to a report released in 2016, ACICS accredited **seventeen** institutions accused of defrauding students—**twelve** of which ACICS saw fit to designate as "honor roll" campuses between 2010 and 2015.[7] The report quoted one college employee who referred to ACICS's accreditation reviews as a "dog and pony show."[8] This report also found that ACICS-accredited schools "consistently produce[d] astronomical debt levels and terrible outcomes for students … measured by graduation rates, post-enrollment earnings, and debt burdens."[9] And the report noted that "[a]lmost three-quarters … of undergraduates at ACICS institutions borrow using federal student loans in order to attend," a figure "well above borrowing rates at schools accredited by other agencies."[10] Thus, the report concluded that "ACICS has spent years cranking open the spigot to allow taxpayer funds to flow to some of the sleaziest actors in American higher education."[11]

27.     Similarly, ProPublica analyzed federal data regarding ACICS and found that "[j]ust 35 percent of students at a typical ACICS-accredited four-year college graduate, the lowest rate for any accreditor"; "[s]tudents at ACICS-accredited four-year schools also take on more debt than students at other schools with similar accreditors, typically about $26,000 in federal loans"; and "about 60 percent of students were unable to repay even $1 of their loan

---

[7]     *Rubber Stamps: ACICS and the Troubled Oversight of College Accreditors*, Office of Sen. Elizabeth Warren 5 (June 10, 2016) [hereinafter *Rubber Stamps*], https://www.warren.senate.gov/files/documents/2016-6-10_ACICS_Report.pdf; *see also* Ben Miller, *ACICS Must Go*, Ctr. for Am. Progress 10-13 (June 2016) [hereinafter Miller, *ACICS Must Go*], https://cdn.americanprogress.org/wp-content/uploads/2016/06/03145034/ACICS-report.pdf (listing institutions).

[8]     *Rubber Stamps* at 1.

[9]     *Id.*

[10]    *Id.* at 7.

[11]    *Id.* at 2.

principal within three years of graduation," which is "23 percentage points higher than the national average."[12]

28.　　As documented in these reports, ACICS consistently accredited troubled, failing institutions, particularly in the for-profit sector.

    a.　　ACICS renewed or maintained accreditation for 59 campuses of Corinthian Colleges "until the day that the troubled chain of for-profit schools declared bankruptcy," even though the chain "was under investigation by over twenty state attorneys general and faced several lawsuits from state and federal authorities … alleging that [it] defrauded students by roping them in using false and misleading information—and then saddled them with crippling debt that would be impossible to repay."[13] Two Corinthian campuses were named as ACICS honor roll institutions in November 2014, roughly five months *after* the Department announced publicly on June 19, 2014 that it was placing Corinthian "on an increased level of financial oversight after the company failed to address concerns about its practices, including falsifying job placement data used in marketing claims to prospective students and allegations of altered grades and attendance."[14]

---

[12]　Annie Waldman, *Who Keeps Billions of Taxpayer Dollars Flowing to For-Profit Colleges? These Guys*, ProPublica (Nov. 3, 2015), https://www.propublica.org/article/accreditors-billions-of-taxpayer-dollars-flowing-to-for-profit-colleges.

[13]　*Rubber Stamps* at 4.

[14]　Press Release, U.S. Department of Education Heightens Oversight of Corinthian Colleges (June 19, 2014), https://www.ed.gov/news/press-releases/us-department-education-heightens-oversight-corinthian-colleges.

b.  ACICS maintained accreditation for Westwood College even after the school reached several million-dollar settlements with federal and state regulators pertaining to matters including "falsified information," "inflated job placement rates," and "exorbitant costs"—even naming Westwood as one of its "honor roll" schools.[15]

c.  ACICS did not begin to revoke ITT Technical Institute's accreditation until a month before it closed in September 2016.[16] "After months of sanctions and years of investigations and lawsuits," ITT Tech closed its 130 campuses, impacting 43,000 students.[17]

d.  ACICS also accredited FastTrain College[18]—known for hiring exotic dancers to recruit students, among its other problematic practices.[19] FastTrain's former owner Alejandro Amor and admissions representatives were charged with submitting falsified student aid applications for approximately 1,300 students who lacked high school diplomas, saddling

---

[15]  *Rubber Stamps* at 4-5.

[16]  Ashley A. Smith, *The End for ITT Tech*, Inside Higher Ed (Sept. 7, 2016), https://www.insidehighered.com/news/2016/09/07/itt-tech-shuts-down-all-campuses.

[17]  *Id.*

[18]  Danielle Douglas-Gabriel, *Betsy DeVos to Reconsider the Fate of Ousted For-Profit College Accreditor*, Wash. Post (April 4, 2018), https://www.washingtonpost.com/news/grade-point/wp/2018/04/04/betsy-devos-to-reconsider-the-fate-of-ousted-for-profit-college-accreditor/.

[19]  Paul Fain, *College Used Strippers as Student Recruiters, Feds Say*, Inside Higher Ed (Dec. 4, 2014), https://www.insidehighered.com/quicktakes/2014/12/04/college-used-strippers-student-recruiters-feds-say.

students with nearly $6.5 million in lost Pell Grant eligibility and Direct Loan funds.[20]

29. ACICS frequently accredited schools where other accreditors raised red flags. For example, the Accrediting Commission of Career Schools and Colleges "raised concerns as early as 2010 about Corinthian's job placement rates."[21] Some colleges even moved to ACICS after their accreditation became tenuous: "Kaplan College and Kaplan Institute campuses consolidated all their locations under ACICS at the same time they faced scrutiny from other accreditation agencies."[22] In other words, ACICS often served as an accreditor of last resort.

### III. The Department Withdraws ACICS's Recognition in 2016.

30. In January 2016, ACICS submitted an application for continued recognition. That application was rejected at every level of review by the Department.

31. To start, in early 2016, the Department staff formally recommended that the Department "[d]eny the agency's petition for renewal of recognition, and withdraw the agency's recognition."[23] The Department staff found that ACICS failed to meet 21 recognition criteria and/or sub-criteria, including criteria relating to job placement and licensing rates and procedures for identifying and addressing at-risk and failing institutions.[24] The Department staff solicited a

---

[20] Press Release, Fast Train Owner and Three Admissions Representatives Arrested for Theft of Federal Student Aid, U.S. Attorney's Office, S.D. Fla. (Oct. 2, 2014), https://www.fbi.gov/contact-us/field-offices/miami/news/press-releases/fast-train-owner-and-three-admissions-representatives-arrested-for-theft-of-federal-student-aid.

[21] Miller, *ACICS Must Go*, at 13.

[22] *Id.* at 14.

[23] *Staff Report to the Senior Department Official on Recognition Compliance Issues*, Dep't of Educ. (2016) [hereinafter *2016 ACICS Staff Report*], https://opeweb.ed.gov/aslweb/finalStaffReports.cfm?aID=15&mid=68.

[24] *Id.*

response from ACICS, but that response failed to change the staff's decision on any of these points.[25]

32.     Following the Department staff's review, NACIQI conducted a lengthy hearing on ACICS's petition at its June 22-24, 2016 meeting, with remarks from ACICS representatives, Department staff, and eighteen third-party commenters.[26] After taking these submissions, NACIQI "concurred with the staff recommendation," and voted to "[d]eny [ACICS's] petition for renewal of recognition, and withdraw the agency's recognition," by a vote of 10-3.[27]

33.     On September 22, 2016, then-Senior Department Official Emma Vadehra agreed with NACIQI and the Department staff and "terminat[ed] the Department's recognition of ACICS as a nationally recognized accrediting agency."[28] The SDO explained that "the staff report outlines major problems with: the rigor of the agency's accreditation and pre-accreditation standards and its application of those standards (34 C.F.R. §§ 602.16(a) and 602.17); its monitoring of the institutions that it accredits (34 C.F.R. § 602.19(b)); and the enforcement of its own accrediting standards (34 C.F.R. § 602.20)."[29] And she underscored that "ACICS's track record does not inspire confidence that it can address all of the problems effectively," given that many of them "are serious and long-standing."[30]

---

[25]   *Id.*

[26]   *Report of the Meeting*, NACIQI (June 22-24, 2016) [hereinafter *NACIQI Report*], https://sites.ed.gov/naciqi/files/2016/09/NACIQI-Report-of-the-MeetingJUNE2016FINAL-508.pdf; *see also* Transcript of June 23, 2016 NACIQI Hearing, *ACICS v. DeVos*, 303 F. Supp. 3d 77 (D.D.C. 2018), ECF No. 11-3.

[27]   *NACIQI Report* at 6, 9.

[28]   Letter from Emma Vadehra, Chief of Staff, Dep't of Educ., to Roger J. Williams, Interim President, ACICS 1 (Sept. 22, 2016), https://blog.ed.gov/files/2016/06/ACICS.pdf.

[29]   *Id.* at 2.

[30]   *Id.*

34. On October 21, 2016, ACICS appealed the SDO's decision to then-Secretary of Education John King.[31]

35. On December 12, 2016, Secretary King rejected ACICS's appeal, and thereby terminated ACICS's recognition as an accrediting agency. The Secretary found "ACICS to be out of compliance with numerous regulatory criteria" and further concluded "that ACICS is not capable of coming into compliance within 12 months or less" given "the nature and scope of ACICS's pervasive noncompliance."[32] He continued: "ACICS has exhibited a profound lack of compliance with the most basic Title IV responsibilities of a nationally recognized accreditor" and failed to "develop and effectively implement a comprehensive scheme necessary to establish, apply, effectively monitor, and enforce the required standards."[33] Indeed, as the Secretary noted, ACICS never even attempted "to argue that it is in full compliance or that it should receive recognition without condition."[34] He therefore terminated ACICS's recognition.[35]

36. At the same time, the Department issued a letter to schools accredited by ACICS informing them of Secretary King's decision. That letter advised "[i]nstitutions that have been using ACICS accreditation to establish eligibility for Title IV, student financial aid programs, … that the Secretary will continue their eligibility, with conditions, to participate in the programs for a period not to exceed 18 months from the date of the loss of recognition."[36] However,

---

[31]  *See Final Appeal Delivered*, ACICS, http://www.acics.org/news/content.aspx?id=6782.

[32]  *See* Decision of the Sec'y, Accrediting Agency Recognition Proceeding, *In re ACICS*, Docket No. 16-44-O, at 1 (Dec. 12, 2016), https://www2.ed.gov/documents/acics/final-acics-decision.pdf.

[33]  *Id.* at 8.

[34]  *Id.* at 4.

[35]  *Id.* at 14.

[36]  Dear Colleague Letter at 1.

"[i]nstitutions that fail to meet the statutory deadline will lose Title IV eligibility."[37] The letter also noted that "[t]he longer an institution operates without oversight from a federally recognized accreditor, the greater the risk that institution presents to students and taxpayers."[38]

37. The Department also issued a letter to students at ACICS-accredited schools. That letter explained that "*[n]ot* terminating ACICS's federal recognition would be to sanction egregious behaviors that put students and taxpayers in harm's way."[39] It also informed students that "it's a requirement for any college or university to receive accreditation from an agency recognized by the Department before its students can use federal financial aid … at the school," but that, "[b]y law, schools can have up to 18 months of continued eligibility for federal aid, so that they can find another accreditor."[40] A question-and-answer document similarly informed students that, unless their school received "a seal of approval from a different recognized accreditor," they "would no longer be able to use their federal student aid at those schools" after the expiration of the 18-month period.[41]

38. After Secretary King withdrew ACICS's recognition, ACICS filed a new petition for initial recognition in December 2017. In response to the petition, the Department's staff prepared a draft report in March 2018 which concluded that ACICS then failed to comply with a staggering *57* of 93 recognition criteria and subcriteria.[42] Specifically, Department staff found

---

[37] *Id.*

[38] *Id.*

[39] Mitchell Letter.

[40] *Id.*

[41] *UPDATE: What College Accreditation Changes Mean for Students*, U.S. Dep't of Educ. (Dec. 12, 2016), https://blog.ed.gov/2016/12/college-accreditation-update/.

[42] Erica L. Green, *Betsy DeVos Reinstated College Accreditor Over Staff Objections*, N.Y. Times (June 11, 2018), https://www.nytimes.com/2018/06/11/us/politics/betsy-devos-for-profit-higher-education.html. The draft staff report is available at https://tcf.org/content/about-

that ACICS "had failed to provide information showing that it had resolved conflicts of interest," "had failed to demonstrate that it had processes in place for evaluating its institutions' compliance with federal financial aid laws," and "did not provide documentation showing that it had ensured that measurements of student achievement rates were rigorous, or that it had a consistent standard for determining when to alert the Education Department to fraud and abuse."[43] In other words, ACICS's problems had grown even worse since the Department withdrew its recognition in December 2016.

### IV.    The Court Remands ACICS's Recognition To The Department.

39.     On December 15, 2016, ACICS filed a lawsuit in this Court in an attempt to force the Department to restore its recognition.[44] ACICS asserted three claims under the Administrative Procedure Act, namely, that Secretary King's decision was arbitrary and capricious, procedurally invalid, and unsupported by record evidence.[45] One of ACICS's primary challenges involved the Department's purported failure to consider an evidentiary submission relating to ACICS's compliance known as the "Part II submission," which the Department asserted had been submitted out-of-time by ACICS. Among other things, ACICS asked the Court to "[v]acat[e] the Secretary of Education's decision to terminate ACICS's recognition as an accreditation agency and further vacat[e] all related directives from the Secretary relating to the termination of ACICS's recognition," and to "[o]rder[] the Secretary of Education to return ACICS's Petition for recognition to the Department Staff for reconsideration."[46]

---

tcf/devos-releases-career-staff-report-profit-college-accreditor-acics-reveals-continued-noncompliance/.

43    *Id.*

44    *See* Complaint, *ACICS* (Dec. 15, 2016), ECF No. 1

45    *Id.* ¶¶ 74-89.

46    *Id.* at 27.

40.     That same day, ACICS also moved for a temporary restraining order and a preliminary injunction,[47] which were denied on December 21, 2016 and February 22, 2017, respectively.[48] In the latter decision, the Court concluded that ACICS had "failed to make a showing of substantial likelihood of success on the merits and the risk of irreparable harm."[49]

41.     On January 24, 2017, the States of Massachusetts, Maryland, Illinois, Maine, and New York, and the District of Columbia, moved to intervene.[50] The Court granted their motion on August 31, 2017.[51]

42.     As soon as they took office, Defendants engaged in efforts to restore ACICS's recognition. While ACICS's lawsuit was pending, Department officials and attorneys at the Department of Justice engaged in extensive internal deliberations regarding settling with ACICS and discussed the possibility with ACICS representatives—and representatives from Career Education Colleges and Universities (CECU), the largest for-profit college trade group— beginning as early as January 2017.

43.     For example, on March 3, 2017, Michael Dakduk, CECU's Executive Vice President & Director of Government Relations, wrote to James Manning and Robert Eitel, two of Secretary DeVos's senior advisors, to let them know that CECU representatives had recently met with the White House to discuss ACICS. On April 12, 2017, Steve Gunderson, the Chairman and CEO of CECU, wrote to request a meeting with Secretary DeVos, making sure to note that the for-profit education sector he represents "generally supported [President Trump's] candidacy."

---

[47]   *See* Mot. for TRO & Prelim. Inj., *ACICS* (Dec. 15, 2016), ECF No. 5.

[48]   *See* Docket, *ACICS.*

[49]   Order at 1, *ACICS* (Feb. 22, 2017), ECF No. 38.

[50]   *See* Docket, *ACICS.*

[51]   *Id.*

44.     Separately, Tonnie Wybensinger, then a lobbyist at Strategos Public Affairs, reached out to the Department on May 9, 2017, to schedule a meeting between Department officials and "the Chairman/CEO of the Education Corporation of America" to discuss ACICS. Ms. Wybensinger sought to keep schools accredited by ACICS—that is, schools that had not convinced any proper accreditor that they merited accreditation—from being "caught up in the debate about ACICS's future."

45.     On information and belief, Department officials assured representatives of the for-profit sector that they would reverse ACICS's derecognition.

46.     Documents obtained by Democracy Forward Foundation, counsel to Plaintiffs, pursuant to a Freedom of Information Act request and lawsuit show that Department officials scheduled numerous meetings with the Department of Justice (DOJ) to consider the industry's entreaties. While the details of these communications were redacted, on information and belief, the Department officials sought to convince the DOJ attorneys to settle the case and restore ACICS's recognition. However, it appears that legal counsel at the Department of Education was also resistant to settling the matter with ACICS, despite the efforts of Department officials.

47.     CECU also wrote a letter asking Congress to "give the schools and the accreditors more time" by passing a law extending the 18-month time period for ACICS-accredited schools to find a new accreditor.[52] However, Congress ultimately did not pass any such legislation.[53]

---

[52]    Paul Fain, *For-Profit Group Wants Extension for ACICS Colleges*, Inside Higher Ed (Jan. 4, 2018), https://www.insidehighered.com/quicktakes/2018/01/04/profit-group-wants-extension-acics-colleges.

[53]    *See S.1771 – Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriation Act, 2018*, Congress.gov, https://www.congress.gov/bill/115th-congress/senate-bill/1771?q=%7B%22search%22%3A%5B%22%5C%22s.1771%5C%22%22%5D%7D&r=1&s=4.

48.     On March 23, 2018, the Court concluded that the Department erred in declining to consider the Part II Submission and certain evidence about ACICS's procedures and remanded the recognition decision to the Department so that it could consider that evidence in the first instance. *See ACICS*, 303 F. Supp. 3d at 102-08, 112-15. At the same time, the Court rejected several other supposed procedural defects alleged by ACICS, and expressly did "not consider the Accrediting Council's challenges to the merits of the Secretary's decision." *Id.* at 108-12, 115-21. The Department's prior findings therefore remained intact.

49.     The Court did not vacate the Department's decision to withdraw ACICS's recognition. Despite ACICS's explicit request in its proposed order for the Court to vacate the decision,[54] the Court declined to do so, ordering only that the case be "**REMANDED** to the Secretary for further proceedings consistent with the Court's Memorandum Opinion."[55] Similarly, the Court's opinion explained that it would "grant in part and deny in part the Accrediting Council's motion, deny the defendants' motion, and remand this case for further proceedings consistent with this memorandum opinion," because it "[found] that the proper remedy for these violations is to remand this case to the Secretary for consideration of this evidence." *ACICS*, 303 F. Supp. 3d at 86, 123. Neither the Court's order nor its opinion made any reference to vacating the Department's recognition decision.

## V.     Secretary DeVos Unlawfully Restores ACICS's Recognition On An Interim Basis.

50.     Because the Court did not vacate the Department's decision, that decision should have remained valid and effective unless and until the Department elected to reverse that

---

[54]     [Proposed] Order at 1, *ACICS* (Mar. 31, 2017), ECF No. 55-1.
[55]     Order at 2, *ACICS* (Mar. 23, 2018), ECF No. 75.

decision in a manner consistent with the law, including the Administrative Procedure Act and the other statutes and regulations governing the Department.

51.     However, on April 3, 2018, Secretary DeVos ordered that "ACICS's status as a federally recognized accrediting agency is restored" pending review.[56] Secretary DeVos's decision meant that colleges accredited by ACICS would "remain eligible to receive federal student aid," even though the Court's "decision did not overturn the department's earlier action."[57] Her decision knowingly "put students at risk of attending lousy schools,"[58] given the findings by both her predecessor and present staff that ACICS failed to comply with federal recognition standards.

52.     In her decision, Secretary DeVos invoked 34 C.F.R. § 602.37, which, as discussed above, permits the Secretary to extend an accreditor's recognition if the Department fails to reach a final decision before the expiration of the accreditor's recognition period. Secretary DeVos reasoned that, "[a]s a result of the district court's remand, there is no final decision on the recognition petition that ACICS submitted to the Department … in January 2016," and thereby extended ACICS's recognition "until such time as I reach a final decision on its January 2016 petition."[59] But there *was* a final decision by the Department, which the Court had not vacated.

53.     Secretary DeVos did not dispute that the Court remanded without vacating the Department's decision to withdraw ACICS's recognition. Indeed, her letter referred to the

---

[56]   Order, *ACICS*, Docket No. 16-44-O, at 1 (Apr. 3, 2018) [hereinafter Interim Recognition Decision], https://web.archive.org/web/20190111153907/https://www2.ed.gov/documents/press-releases/acics-docketno-16-44-0.pdf.
[57]   Eric Kelderman, *DeVos Gives Controversial Accreditor a New Chance and More Time*, Chron. of Higher Educ. (Apr. 3, 2018), https://www.chronicle.com/article/DeVos-Gives-Controversial/243028.
[58]   *Id.*
[59]   Interim Recognition Decision at 1.

Court's "remand" decision four separate times—not once using the term vacate.[60] Nor did Secretary DeVos identify any portion of the Court's decision that indicated that the Court intended to vacate the Department's decision.

54.     On remand, Secretary DeVos explained that she would consider the Part II submission, as well as evidence of ACICS's procedures for placement verification. She permitted ACICS to "respond to this information in writing and … include additional relevant evidence" by May 30, 2018.[61]

55.     Diane Auer Jones, whom Secretary DeVos had appointed as the SDO for the purpose of accreditor recognition, was tasked with reviewing ACICS's suitability to accredit schools. Documents obtained by Democracy Forward Foundation pursuant to a Freedom of Information Act request show that, as part of her role as SDO, Ms. Jones was involved with the April 3 decision to temporarily continue ACICS's recognition, as well as the guidance letters the Department provided to ACICS and schools accredited by ACICS.

56.     Ms. Jones has a long history of supporting the for-profit college industry and advocating for laxer recognition standards for accreditors. From 2010 to 2015, Ms. Jones served as the Senior Vice President and Chief External Affairs Officer at the Career Education Corporation (CEC), a chain of for-profit colleges overseeing approximately 80 campuses, roughly 70 of which were accredited only by ACICS.[62] In this role, she served as the

---

[60]   *Id.* at 1-2.

[61]   *Id.* at 2.

[62]   Letter from Sen. Richard Blumenthal et al. to Sec'y of Educ. Betsy DeVos 1 (Apr. 26, 2018), https://www.blumenthal.senate.gov/imo/media/doc/04.26.2018%20-%20DeVos%20-%20Jones%20Conflicts%20of%20Interest.pdf [hereinafter Senators' Letter].

corporation's primary representative to accreditation agencies and worked directly with ACICS.[63]

57. Ms. Jones has previously stated that she believes the recognition process is too hard on accreditors, writing in 2014 that the Department "is requiring accreditors to jump through an ever-changing and ever-expanding set of hoops in order to gain or maintain the Department's recognition."[64]

58. From 2015 until November 2017, just three months before she joined the administration, Ms. Jones served as President of AJsquared Consulting, where she lobbied on behalf of for-profit colleges on issues including regulatory compliance.[65] Ms. Jones omitted this work from her public financial disclosure report.[66]

59. Given these ties, counsel to Plaintiffs asked Ms. Jones to formally recuse herself from the ACICS review in July 2018.[67] She did not do so, and counsel for Plaintiffs has never received a response from the Department.

60. Documents received by Democracy Forward Foundation show that Robert Eitel has also been involved with decisions relating to ACICS, including the April 3 decision to reinstate ACICS and the Department's accompanying guidance documents. Eitel previously served as vice president of Bridgepoint Education, a for-profit college operator, and before that,

---

[63]  *Id.*

[64]  Diane Auer Jones, *The Changing Role of Accreditation and the Department of Education: Benefit or Menace?*, Am. Acad. for Liberal Educ. 4 (Apr. 2014), https://www.aale.org/docs/AuerJones.2014.pdf.

[65]  Senators' Letter at 2.

[66]  *Public Financial Disclosure Report*, U.S. Office of Gov't Ethics (Jan. 2018), https://www.documentcloud.org/documents/4416584-Diane-Jones-Financial-Disclosure.html.

[67]  Letter from Democracy Forward Found. to Diane Auer Jones, Dep't of Educ. (July 2, 2018), https://democracyforward.org/wp-content/uploads/2018/03/Jones-Recusal-Letter-7-2-18.pdf.

CEC.[68] Eitel played an integral role in the Department's attempts to roll back several rules aimed at providing relief to students, including the Department's borrower defense and gainful employment regulations.[69]

61.     Secretary DeVos herself also has close financial ties to for-profit institutions stemming from before she assumed her role as Secretary of Education. Most relevant to this case, she held investments in Apollo Investment Corporation, an investor in Delta Educational Systems Inc., a chain of several dozen for-profit colleges accredited by ACICS.[70] She also had investments in a Department of Education contractor that sought to collect on student loan defaults, as well as other entities in the for-profit education sector.[71] Pursuant to her January 2017 ethics agreement, Secretary DeVos was not required to divest from these holdings.[72] In addition to Ms. Jones and Mr. Eitel, Secretary DeVos has surrounded herself with other advisors from the for-profit college sector.[73]

---

[68]  Patricia Cohen, *Betsy DeVos's Hiring of For-Profit College Official Raises Impartiality Issues*, N.Y. Times (Mar. 17, 2017), https://www.nytimes.com/2017/03/17/business/education-for-profit-robert-eitel.html.

[69]  Erin Dooley, *Lawmakers Demand Review of Education Department Ethics Program After Former For-Profit College Exec Shapes Policy*, ABC News (June 14, 2018), https://abcnews.go.com/Politics/exclusive-warren-krishnamoorthi-demand-examination-education-department-ethics/story?id=55879180.

[70]  Ben Miller & Laura Jimenez, *Inside the Financial Holdings of Billionaire Betsy DeVos*, Ctr. for Am. Progress (Jan. 27, 2017),  https://www.americanprogress.org/issues/education-postsecondary/news/2017/01/27/297572/inside-the-financial-holdings-of-billionaire-betsy-devos/.

[71]  *Id.*

[72]  Letter from Elisabeth P. DeVos to Marcella Goodridge-Keiller, Designated Agency Ethics Official, U.S. Dep't of Educ. (Jan. 19, 2017), https://extapps2.oge.gov/201/Presiden.nsf/PAS+Index/E2461CB47CF5A473852580C1002C7A3B/$FILE/DeVos,%20Elisabeth%20P.%20%20finalAMENDEDA.pdf.

[73]  *See, e.g.*, Annie Waldman, *For-Profit Colleges Gain Beachhead in Trump Administration*, ProPublica (Mar. 14, 2017), https://www.propublica.org/article/for-profit-colleges-gain-beachhead-in-trump-administration; Michael Stratford, *Trump Administration Selects Former*

62.     Secretary DeVos gave Ms. Jones until July 30, 2018 to "respond in writing to ACICS's submission."[74] She twice extended the deadline for Ms. Jones to respond to ACICS's submission, first to September 4, and then to September 28.[75]

## VI.     Secretary DeVos Restores ACICS's Recognition On A Final Basis.

63.     On September 28, 2018, Ms. Jones recommended that Secretary DeVos grant ACICS 12 months of continued recognition to come into full compliance.[76] At the outset, Ms. Jones recognized that Secretary King's decision to terminate ACICS's recognition concurred with the decisions of the previous Senior Department Official, NACIQI, and the Department staff.[77] Nevertheless, she found that "ACICS is in compliance with 19 of the 21 applicable recognition criteria," and "was likely in compliance with many of these criteria in 2016 at the time of the Secretary's Decision."[78] Ms. Jones characterized the Department's previous decision as guided by "a presumption of guilt," a "double-standard for inequitable treatment," and/or a "double-jeopardy standard."[79]

*DeVry Official to Lead College Enforcement Unit*, Politico (Aug. 30, 2017), https://www.politico.com/story/2017/08/30/julian-schmoke-jr-trump-education-department-college-enforcement-242176.

[74]     Interim Recognition Decision at 2.

[75]     *See* Order Granting Extension of Time, *ACICS* (Aug. 28, 2018), http://www.acics.org/uploadedFiles/Hot_Topics/Secretarial%20Order%20Granting%20Second%20Extension%208.28.2018.pdf; Order Granting Extension of Time, *ACICS* (July 30, 2018), http://acics.org/uploadedFiles/Temporary/Secretarial%20Order%20Granting%20Extension%207.30.18.pdf.

[76]     Senior Dep't Official's Resp. to ACICS, *ACICS*, Docket No. 16-44-O (Sept. 28, 2018) [hereinafter Jones Recommendation], https://www.insidehighered.com/sites/default/server_files/media/SDO%20Response%20to%20ACICS%209.28.18.pdf.

[77]     *Id.* at 1.

[78]     *Id.* at 2; *see id.* at 3-4.

[79]     *Id.* at 8, 11, 33.

64.     One of the nineteen criteria that Ms. Jones found ACICS to satisfy required ACICS to demonstrate that its standards, policies, procedures and decisions are "widely accepted." 34 C.F.R. § 602.13. For this criterion, Ms. Jones purported to rely on nine letters of support from other institutional accrediting agencies, which Ms. Jones called "important evidence of ACICS's wide acceptance."[80] The letters, however, did not exist. Eight of the nine accreditors have since confirmed to Congress that they did not provide any written or verbal statements to the Department or to ACICS regarding the agency's acceptance as an accreditor in the higher education community.[81]

65.     In response, the Department called this fabrication an "inadvertent error in the editing process" and posted a "correction" on October 15, 2018.[82] The "correction" still cited to letters of support, this time from one institutional accrediting agency and four programmatic accrediting agencies. The "correction" stated that "[e]ach of these is a widely accepted accreditor in its own right, and its support of ACICS as a peer in this highly scrutinized area serves as important evidence of ACICS's wide acceptance."[83] While this time the letters existed, Ms. Jones grossly mischaracterized and exaggerated the level of support that they contained.

---

[80]   Jones Recommendation at 24.

[81]   Letter from Sen. Elizabeth Warren et al. to Sec'y of Educ. Betsy DeVos at 3 (Dec. 11, 2018) [hereinafter December Warren Letter], https://www.warren.senate.gov/imo/media/doc/2018.12.11%20Letter%20to%20Department%20of%20Education%20re%20ACICS%20recognition.pdf.

[82]   *Education Dept. Overstated Endorsements of For-Profit College Accreditor*, Politico (Oct. 5, 2018), https://www.politico.com/newsletters/morning-education/2018/10/05/education-dept-overstated-endorsements-of-for-profit-college-accreditor-363214; Letter from Sen. Elizabeth Warren to Sec'y of Educ. Betsy DeVos et al. (Oct. 18, 2018), https://www.warren.senate.gov/imo/media/doc/2018-10-16%20Letter%20to%20ED%20re%20ACICS2.pdf.

[83]   *See* Corrected Senior Dep't Official's Resp. to ACICS, *ACICS*, Docket No. 16-44-O, at 24 (Oct. 15, 2018), https://www2.ed.gov/about/offices/list/ope/correctedresponsefinal.pdf.

Following an inquiry into the contents of these letters, multiple members of Congress concluded that "four out of five of these agencies carefully avoided asserting support, endorsement, or unequivocal acceptance of ACICS as a peer."[84]

66.     For example, in one letter, the Accreditation Council for Occupational Therapy Education (ACOTE) explicitly stated that "[w]e do not interpret the 'widely accepted standard … [and are] not in the position to judge if another accrediting agency is 'widely accepted' as defined in federal law and regulation."[85] In another, the American Registry of Radiologic Technologists (ARRT) stated that it "does not make statements regarding how 'widely accepted' a particular accreditor is."[86] A third, the Accrediting Bureau of Health Education Schools (ABHES), went out of its way to avoid endorsing or indicating support for ACICS and, in response to a Congressional inquiry regarding the content of these letters, stated that "[i]t is not ABHES practice to endorse other organizations."[87] Yet Ms. Jones still concluded that these letters served as "important evidence of ACICS's wide acceptance."[88]

67.     On November 21, 2018, Secretary DeVos agreed with Ms. Jones that "ACICS should be granted a 12-month period to come into compliance."[89] In her eight-page decision, the Secretary found that ACICS was "compliant with all but two recognition criteria," relating to the competency of its representatives and avoiding conflicts of interest.[90] Her decision relies entirely

---

[84]   December Warren Letter at 4.

[85]   *Id.* at 5.

[86]   *Id.*

[87]   *Id.*

[88]   Corrected Senior Dep't Official's Response to ACICS at 24.

[89]   Decision of the Sec'y, *ACICS*, Docket No. 16-44-O, at 1 (Nov. 21, 2018) [hereinafter DeVos Final Recognition Decision], http://www.acics.org/uploadedFiles/Hot_Topics/16-44-O%20Final%20Decision%20of%20the%20Secretary.pdf.

[90]   *Id.* at 1, 3-4.

on Ms. Jones's recommendation, expressly adopting its findings or conclusions on seven separate occasions, without noting any disagreements.[91] Secretary DeVos also took her predecessor, Secretary King, to task, arguing that his 2016 decision withdrawing recognition from ACICS "ignored or mischaracterized significant evidence," and agreeing with Ms. Jones that his decision "suffered from insufficient evidence, circular reasoning, and a desire to achieve a preordained result."[92] She therefore granted ACICS 12 months of continued recognition to demonstrate compliance with the remaining two criteria.[93] Within weeks of that decision, ACICS-accredited ECA closed all of its campuses.

68.     In each of these decisions, Ms. Jones and Secretary DeVos reiterated their understanding that the Court had remanded the decision to the Department, making no mention of vacatur. Ms. Jones explained that the Court "***remanded*** the case back to the Secretary."[94] Secretary DeVos similarly stated that "ACICS sought the remedy of ***remand***" and that "the Court concluded that the proper remedy was to ***remand*** the matter to [her]."[95]

69.     Similarly, in recent congressional testimony, Ms. Jones stated that the Court "remanded the decision back to the department," and that ACICS was ultimately reinstated because "the courts made that decision."[96]

---

[91] *Id.*

[92] *Id.* at 4, 8.

[93] *Id.* at 8.

[94] *Jones Recommendation* at 2 (emphasis added).

[95] *DeVos Final Recognition Decision* at 2 (emphasis added).

[96] *Examining For-Profit College Oversight and Student Debt*, House Comm. on Oversight & Reform, https://oversight.house.gov/legislation/hearings/examining-for-profit-college-oversight-and-student-debt.

70.     Members of Congress immediately voiced concern about Secretary DeVos's decision to reinstate ACICS. On December 11, 2018, a group of lawmakers urged her to rescind the decision, explaining that "[i]n light of the latest abrupt closure of [ACICS-accredited] Education Corporation of America—and the lack of clear oversight and protection from ACICS on behalf of over 20,000 students at 70 campuses nationwide—it is clear you made this decision improperly and despite warnings."[97] Their letter further underscored that "ACICS now has the unique distinction of being the sole accrediting agency that has overseen the three largest college collapses in higher education."[98] They continued: "[i]n every case, ACICS has disregarded clear warning signs and has failed to act quickly enough to protect students and taxpayers."[99] In particular, Ms. Jones's reliance on non-existent letters of support from accreditors "raise[d] serious questions about the legitimacy of the entire reinstatement process and critically taint [the Secretary's] decision."[100]

71.     Then, on December 17, Congressman Bobby Scott and Senator Patty Murray called on the Department's Office of Inspector General to investigate Secretary DeVos's decision. Their letter referenced the recent closures of ECA, ITT, and Corinthian, noting that "[d]espite evidence of financial instability and underperformance, ACICS accredited each of these college chains until the day of or day before each shut its doors"—"fail[ing] to fulfill its basic duty to protect students from and inform them of the schools' likely closure."[101]

---

[97]   December Warren Letter at 1.

[98]   *Id.* at 2.

[99]   *Id.*

[100]  *Id.* at 6.

[101]  Letter from Rep. Bobby Scott & Sen. Patty Murray to Sandra Bruce, Acting Inspector Gen., U.S. Dep't of Educ., at 1 (Dec. 17, 2018), https://edlabor.house.gov/imo/media/doc/2018-12-

Congressman Scott and Senator Murray suggested that "[g]iven ECA's record of fiscal problems, it appears the Department neglected to examine the accreditor's statutory and regulatory responsibility to assess its institutions' fiscal and administrative capacities, as well as their records of compliance."[102] In response, a spokeswoman for OIG stated that it planned to review the Department's decision.[103]

72.     Department officials tried to force OIG to abandon its review. On January 3, 2019, Deputy Secretary Mitchell Zais sent a letter to Acting Inspector General Sandra Bruce demanding that her "office reconsider any plan that it might have to review the Department's 2018 decision and 2018 Recommendation," or alternatively, that it "begin with an examination of the previous Administration's decision-making that led to the denial of ACICS's petition for continued recognition."[104] Ms. Bruce responded that her office did "not believe it is appropriate to engage further with the Department regarding our intended review of this matter," given that "[i]ndependence (in appearance and fact) is key in the effective operation of an OIG."[105]

73.     Department officials and the White House then attempted to fire Acting Inspector General Bruce. On January 31, President Trump appointed a new acting inspector general: the

---

[102] 17%20OIG%20Audit%20Request%20of%20ACICS%20-%20Enclosures%201%20with%20Appendix%20and%202.pdf.

[102] *Id.*

[103] *See* Collin Binkley, *Inquiry Will Review DeVos's Revival of Troubled Accreditor*, Assoc. Press (Dec. 19, 2018), https://www.apnews.com/4398a6f06b5c496283cf03bab7da67c7.

[104] Letter from Mitchell M. Zais, Deputy Sec'y, U.S. Dep't of Educ., to Sandra Bruce, Acting Inspector Gen., U.S. Dep't of Educ., at 2 (Jan. 3, 2019), https://www.insidehighered.com/sites/default/server_files/media/ACICS%20Letter%z2001.03.2018.pdf.

[105] Letter from Sandra D. Bruce, Acting Inspector Gen., U.S. Dep't of Educ., to Mitchell M. Zais, Deputy Sec'y, U.S. Dep't of Educ., at 1 (Jan. 7, 2019), https://www.insidehighered.com/sites/default/server_files/media/IG19-001_Response%20to%20DepSec%20Inquiry%20iso%20ACICS.pdf.

Department's Deputy General Counsel, Phil Rosenfelt.[106] According to emails obtained by Democracy Forward Foundation, Mr. Rosenfelt had himself been involved in the Department's review of ACICS. Lawmakers immediately objected. Senator Elizabeth Warren emphasized the decision "will do grave damage to the independence and effectiveness of the OIG,"[107] while three other lawmakers noted that Mr. Rosenfelt's "role implementing virtually all programs that the OIG is charged with investigating" would result in severe conflicts of interest.[108] The Department reversed course a day later, and announced that Ms. Bruce would remain in her position.[109]

74.     On February 19, 2019, five lawmakers sent a letter to Secretary DeVos requesting information about these "troubling actions."[110] In that letter, they explained that they were "disturbed to learn that the decision to remove Acting Inspector General Bruce was preceded by demands from the Department that the OIG drop an investigation into Secretary DeVos's reinstatement of [ACICS] or alternatively to focus the investigation on Department decisions during the Obama Administration," referencing Deputy Secretary Zais's January 3 letter.[111] The

---

[106] *See* Michael Stratford, *Trump Backtracks on Replacement of Education Department Watchdog*, Politico (Feb. 1, 2019), https://www.politico.com/story/2019/02/01/elizabeth-warren-education-betsy-devos-1138082.

[107] Letter from Sen. Elizabeth Warren to Pres. Donald Trump at 1 (Jan. 31, 2019), https://static.politico.com/0c/fa/6ebd8bc8480189223d5c16dbd0a4/2019.01.31%20Letter%20to%20President%20Trump%20re%20replacement%20of%20Education%20Dept%20Acting%20Inspector%20General.pdf

[108] Letter from Rep. Bobby Scott et al. to Sec'y of Educ. Betsy DeVos at 1 (Feb. 1, 2019), https://edlabor.house.gov/imo/media/doc/2019-02-01%20Top%20Dems%20Demand%20Answers%20From%20ED%20Following%20Move%20to%20Replace%20Independent%20Watchdog%20With%20Top%20Department%20Official.pdf.

[109] *Id.*

[110] Letter to Sec'y Betsy DeVos from Cong. Bobby Scott et al. at 1 (Feb. 19, 2019), https://edlabor.house.gov/imo/media/doc/ED%20OIG%20Follow%20up%20Letter%202-19.pdf.

[111] *Id.*

lawmakers voiced concern "that these actions by the Deputy Secretary represent a clear attempt to violate the statutory independence of the OIG."[112]

75. On information and belief, OIG's review into the Department's decisions regarding ACICS remains ongoing.

## VII. DeVos's Interim Recognition Order Unlawfully Allowed Virginia College And Other ECA Schools To Receive Thousands Of Improperly Issued Loans As They Collapsed.

76. Defendants' prejudged determination to restore ACICS's recognition had predictably devastating consequences for countless students—most significantly, the thousands of students who enrolled at the 70 schools operated by ECA for the Fall 2018 term. ECA schools were accredited only by ACICS. Without Secretary DeVos's unlawful April 3, 2018 decision, they would have lost accreditation as of June 12, 2018, as explained above, and the Department would have been unable to issue loans to students enrolled in them.

77. Plaintiffs Mark Passut and Mark Kaiser attended Virginia College, one of ECA's schools, at its campus in Richmond.

78. Prior to Secretary DeVos's decision, the College's then-President repeatedly said that Secretary DeVos would reverse ACICS's derecognition. Similarly, in or about February 2018, Virginia College held town halls to assure students that it would remain accredited.

79. Virginia College was not able to earn accreditation from anyone besides ACICS. Virginia College and many other ECA schools sought accreditation from the Accrediting Council for Continuing Education & Training (ACCET). ACCET denied accreditation to

---

[112] *Id.* at 2.

Virginia College on May 1, 2018, reaffirming that denial on August 31, after the appeals panel found that Virginia College failed to meet nineteen of ACCET's institutional standards.[113]

80.     Nevertheless, because of Secretary DeVos's April 2018 decision, the College and ECA's other schools remained accredited past June 12, 2018. After receiving temporary recognition from Secretary DeVos, ACICS reviewed the findings by ACCET, but did not follow ACCET in refusing to accredit Virginia College at that time.[114] Instead, it issued a directive to show cause why Virginia College's accreditation should not be withdrawn by suspension at ACICS's August 2018 meeting.[115] After that meeting, ACICS again extended Virginia College's show-cause directive, thereby continuing its accreditation.[116] For many of the areas in which ACCET had found Virginia College non-compliant, ACICS found that "the alleged deficiency does not result in non-compliance with ACICS standards."[117]

81.     These actions enabled Virginia College to enroll students, including Mr. Passut and Mr. Kaiser, for the Fall 2018 term—and allowed the Department to issue loans to them. In Mr. Passut's and Mr. Kaiser's cases, they took on thousands of dollars in Department-issued debt to pay the quarterly tuition. If Virginia College had not again been able to claim accredited

---

[113] Letter from William V. Larkin, Exec. Dir., ACCET, to John Carreon, Senior Vice President, Virginia College (Aug. 31, 2018), http://s3.amazonaws.com/docs.accet.org/downloads/adverse/1539.pdf.

[114] Letter from Michelle Edwards, President & CEO, ACICS, to Gregory Gossett, Campus President, Virginia College (May 8, 2018), http://www.acics.org/uploadedFiles/Actions/00010582_VirginiaColl_SC_AdverseInformation.pdf.

[115] Id.

[116] Letter from Michelle Edwards, President & CEO, ACICS, to Deana Southerland, Interim Campus President, Virginia College (Sept. 7, 2018), http://www.acics.org/uploadedFiles/Actions/00010582_VirginiaColl-SCC.pdf.

[117] Id. at 2.

status, or eligibility for federal student aid, Mr. Passut and Mr. Kaiser would not have enrolled for the Fall 2018 term.

82. Finally, on December 4, 2018, ACICS withdrew accreditation from Virginia College.[118]

83. Virginia College shuttered its doors the next day along with ECA's other campuses. As late as one week before closure, Virginia College (and, on information and belief, most of ECA's other schools) was accepting new students with new Department-issued loans. ECA and its schools are now in receivership.

84. The school sent Mr. Passut and Mr. Kaiser no notification of its closure; the only announcement they received came from their Field Work Coordinator. They also received a notice from the Virginia Department of Education, but no information from the U.S. Department of Education.

85. Virginia College's Richmond campus did not arrange teach-outs for its students before it closed, as did some Virginia College campuses and other ECA schools before closing in September.[119]

86. Plaintiffs transferred to Eastern Virginia Career College. They received no credit for the several months of time and work they spent in the Virginia College program in the fall of 2018.

87. Mr. Passut now pays tuition and expenses out of pocket and owes thousands of dollars to the Department of Education. Mr. Passut had saved for three years to attend Virginia

---

[118] Letter from Michelle Edwards, President & CEO, ACICS, to Stuart Reed, CEO, ECA (Dec. 4, 2018), http://www.acics.org/uploadedFiles/Actions/00016224_ECA-VC_WS_Redacted.pdf.
[119] *See* Andrew Kreighbaum, *For-Profit Chain Will Close Dozens of Campuses*, Inside Higher Ed (Sept. 12, 2018), https://www.insidehighered.com/news/2018/09/12/profit-chain-will-close-dozens-campuses.

College—an effort to offer a better life for his two children, ages eight and ten. He expects to graduate in August 2019, having lost four months of income.

88. Mr. Kaiser also owes thousands of dollars to the Department. He is anticipating having to re-take two anatomy classes and an additional year of coursework. He will pay an additional $8,000 in tuition and will have lost an additional year of income.

89. On December 21, 2018, a group of lawmakers also launched an investigation into ACICS's failure to protect students from the collapse of ECA.[120] Specifically, they voiced concern "as to why ACICS granted accreditation to ECA schools despite reports of rampant financial instability," and sought "clarity regarding preventative measures ACICS could have taken … that would have protected ECA students' class credits and educational investments in the event of permanent school closure."[121] Most troubling, the lawmakers noted that "ACICS's oversight shortcomings potentially enabled ECA to continue its business as usual enrolling students and receiving federal student aid funds while ECA struggled financially."[122]

## CLASS ACTION ALLEGATIONS

90. Plaintiffs bring this action on their own behalf and, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2), on behalf of a Class of all persons to whom the Department of Education issued loans to pay tuition or other expenses at schools owned or operated by ECA and those loans were disbursed between June 12 and November 21, 2018 (the "interim recognition period").

---

[120] Letter from Sen. Elizabeth Warren et al. to Michelle Edwards, President & CEO, ACICS (Dec. 21, 2018), https://www.warren.senate.gov/imo/media/doc/Letter%20to%20ACICS.pdf.
[121] *Id.* at 1.
[122] *Id.* at 5.

91.     As of Fall 2018, ECA schools enrolled approximately 18,000 students. On information and belief, the majority of these students were issued loans by the Department. The specific identity of all Class members is ascertainable from the Department's records.

92.     The case raises common questions of law and fact that are capable of Classwide resolution. Most centrally, it raises the questions of whether Defendants' April 3, 2018 interim recognition decision violated the Administrative Procedure Act and, if so, whether loans that the Department issued for tuition and other expenses at ECA schools between June 12 and November 21, 2018 are enforceable.

93.     Defendants' unlawful decision to restore ACICS's recognition, and to resume issuing loans to pay tuition and expenses at schools accredited only by ACICS, was identical as to the entire Class, all of whom were issued loans that the Department could not have issued but for the unlawful decision. Defendants' challenged actions therefore applied generally to the entire Class, making final injunctive or corresponding declaratory relief regarding that decision appropriate respecting the Class as a whole.

94.     Plaintiffs' claims are typical of the claims of other Class members as they arise out of the same course of conduct and the same legal theories, and they challenge Defendants' conduct with respect to the Class as a whole.

95.     The named Plaintiffs are capable of and committed to fairly and adequately protecting the interests of the Class and have no conflicts with other Class members.

96.     The named Plaintiffs are represented by counsel experienced in administrative law and class action litigation.

## CLAIMS FOR RELIEF

### Count One
### (Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C))

97.     Plaintiffs repeat and incorporate by reference each of the foregoing allegations as if fully set forth herein.

98.     Defendants' interim recognition decision constitutes "final agency action for which there is no other adequate remedy in court" and is "subject to judicial review." 5 U.S.C. § 704; *see id.* § 702.

99.     Under the Administrative Procedure Act, a "reviewing court shall … hold unlawful and set aside agency action … found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations." *Id.* § 706(2)(A), (C).

100.     As described above, the Department's derecognition decision of December 12, 2016, was not vacated by the Court. It therefore remained final and continued to bind the Department while the Department again weighed whether to continue ACICS's recognition. The Department's regulations specifically provide for an extension prior to a final decision (34 C.F.R. § 602.37(h)), but do not authorize an extension after a final decision. Secretary DeVos's decision to restore recognition to ACICS was therefore "not in accordance with law" and/or "in excess of statutory jurisdiction, authority, or limitations."

101.     Secretary DeVos's contrary conclusion that "there is no final decision on the recognition petition that ACICS submitted," upon which she based her analysis, was wrong.[123] Because the sole basis for her April 3, 2018 order was factually and legally incorrect, her decision was "arbitrary" and "capricious."

---

[123] Interim Recognition Decision at 1.

102.     Moreover, Secretary DeVos's decision came just a month after Department staff reaffirmed—consistent with the decisions of Secretary King, the previous SDO, and NACIQI, and the original Department staff recommendation—that ACICS was out of compliance with the majority of the accreditor recognition criteria and therefore could not serve as a guarantee of the quality of the schools that it accredited. Her decision therefore arbitrarily and capriciously disregarded the importance of the recognition system and the interests of students attending ACICS-accredited schools.

103.     In the absence of a valid accreditor, the Department's provisional certification for ECA schools would have expired on June 12, 2018, eighteen months after the Department's final derecognition decision was entered in December 2016. Those schools therefore would have become ineligible to receive federal student aid under Title IV. 20 U.S.C. § 1099(c). Because the Department's decision to restore ACICS's accreditation was unlawful, schools accredited by ACICS remained ineligible to receive federal student aid, and any loans issued by the Department for the purposes of attending those schools during the interim recognition period were unlawful and void *ab initio*.

104.     Alternatively, Class members, including Mr. Passut and Mr. Kaiser, relied on the Department's decision in deciding to enroll or re-enroll in ECA schools accredited by ACICS. The Department's decision caused harm to Class members by saddling them with additional debt for a term in which they received no academic credit. The Court should therefore exercise its equitable authority to vacate, cancel, or otherwise nullify any loans issued by the Department during the interim recognition period, even if those loans are not void *ab initio*.

**Count Two**
**(Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (D))**

105.    Plaintiff repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

106.    Under the Administrative Procedure Act, a "reviewing court shall … hold unlawful and set aside agency action … found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [or] … without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D).

107.    Both the Due Process Clause of the Constitution and general principles of administrative law require that an agency adjudication be administered by a "neutral and detached adjudicator." *Ass'n of Nat'l Advertisers, Inc. v. F.T.C.*, 627 F.2d 1151, 1168 (D.C. Cir. 1979). An administrator conducting an adjudication—like whether to recognize an accreditor— must be disqualified if "a disinterested observer may conclude that [she] has in some measure adjudged the facts as well as the law" of the proceeding "in advance of hearing it." *Cinderella Career & Finishing Sch., Inc. v. F.T.C.*, 425 F.2d 583, 591 (D.C. Cir. 1970) (quoting *Gilligan, Will & Co. v. Sec. & Exch. Comm'n*, 267 F.2d 461, 469 (2d Cir. 1959)).

108.    Similarly, the U.S. Office of Government Ethics has promulgated Standards of Ethical Conduct for Employees of the Executive Branch, which require all employees to "respect and adhere to" certain "principles of ethical conduct," and to "endeavor to avoid any actions creating the appearance" of illegal or unethical behavior. 5 C.F.R. § 2635.101(a), (b)(14).

109.    As detailed above, a disinterested observer could conclude that the officials charged with considering ACICS's recognition, Secretary DeVos and Ms. Jones, had "in some measure adjudged the facts as well as the law" prior to the proceeding, based on their communications with industry representatives, failure to consider evidence from their staff that

39

counseled against recognition, misrepresentations about evidence from other accreditors supporting continued recognition, numerous ties to and potential conflicts of interest with the for-profit college industry, previous statements regarding the value, or lack thereof, of the accreditation process, and other indicia of bias. The interim recognition decision was therefore issued "without observance of procedure required by law," and is invalid.

110. For the reasons explained above, all loans issued to attend ACICS-accredited schools during the interim recognition period, including Class members' loans, are therefore unenforceable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

1. declare the April 3, 2018 interim recognition decision arbitrary and capricious, contrary to law, in excess of statutory authority, and procedurally infirm, and that any loans issued by the Department of Education to pay tuition or other expenses at ECA schools between June 12 and November 21, 2018 are null and void, or otherwise unenforceable;

2. vacate the interim recognition decision and any resulting loans issued by the Department of Education to pay tuition or other expenses at ECA schools accredited solely by ACICS during the interim recognition period;

3. enjoin Defendants, their officers, their employees, and their agents, to cancel, discharge, forgive and/or otherwise nullify Plaintiffs' outstanding federal loan balances, to refrain from attempting to collect Plaintiffs' outstanding federal loan balances, and to refund any payments already received, for loans issued during the interim recognition period;

4. award Plaintiffs their costs, attorneys' fees, and other disbursements for this action; and

5.   grant any other relief this Court deems appropriate.


Dated: June 3, 2019                                Respectfully submitted,

*/s/ Eric Rothschild*                              */s/ John T. Lewis*

Eric Rothschild (D.C. Bar No. 1048877)             John Lewis (D.C. Bar No. 1033826)
Alexander S. Elson (D.C. Bar No. 1602459)          Jeffrey B. Dubner (D.C. Bar. No. 1013399)
National Student Legal Defense Network             Javier M. Guzman (D.C. Bar No. 462679)
1015 15th Street NW, Suite 600                     Democracy Forward Foundation
Washington, DC 20005                               1333 H Street NW
(202) 734-7495                                     Washington, DC 20005
eric@nsldn.org                                     (202) 448-9090
alex@nsldn.org                                     jlewis@democracyforward.org
                                                   jdubner@democracyforward.org
**Counsel for Plaintiffs**                         jguzman@democracyforward.org

                                                   **Counsel for Plaintiffs**