## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARK PASSUT and<br>MARK KAISER, | ) ) ) | |
| *Plaintiffs*, | ) ) ) | |
| v. | ) ) | Case No. 1:19-cv-1606 (RBW) |
| BETSY DEVOS, in her official capacity as<br>U.S. Secretary of Education, and<br>UNITED STATES DEPARTMENT<br>OF EDUCATION, | ) ) ) ) ) | |
| *Defendants*. | ) ) ) | |

## DEFENDANTS' MOTION TO DISMISS

For the reasons set forth in the accompanying memorandum of law, Defendants

respectfully move the Court to dismiss this action. *See* Fed. R. Civ. P. 12(b)(1), (6).

Date: September 23, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/  Kate Bailey*
KAREN S. BLOOM
KATE BAILEY
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 514-9239 (phone)
Email: kate.bailey@usdoj.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MARK PASSUT and | ) | |
| MARK KAISER, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-1606 (RBW) |
| | ) | |
| BETSY DEVOS, in her official capacity as | ) | |
| U.S. Secretary of Education, and | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF EDUCATION, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................ 1

BACKGROUND ............................................................................................................................. 2

   I.    STATUTORY AND REGULATORY BACKGROUND ................................................. 2

      A.  The William D. Ford Federal Direct Loan Program ........................................ 2

      B.  Discharges of Direct Federal Loans ................................................................. 2

      C.  Oversight of Institutions Participating in Direct Loan Program ...................... 3

   II.   ACICS ........................................................................................................................... 5

      A.  *ACICS* Litigation ............................................................................................. 6

      B.  Post-*ACICS* Proceedings ................................................................................. 7

      C.  ACICS's Accreditation of ECA ...................................................................... 8

   III.  This Lawsuit ................................................................................................................ 9

STANDARD OF REVIEW ......................................................................................................... 11

ARGUMENT ............................................................................................................................... 13

   I.    This Court Lacks Jurisdiction Because Plaintiffs Lack Standing ..................................... 13

      A.  Plaintiffs' lack of credit is in no way traceable to the Secretary's decision or the school's collapse ........................................................................................... 13

      B.  Even if Plaintiffs' lack of academic credit were traceable to the Secretary's decision, the relief available in this APA suit would have no effect on Plaintiffs' loans ................... 17

   II.   Counts I Does Not State A Reviewable Claim Under Section 706(2) of the APA .......... 20

      A.  There is No Final Agency Action To Review ................................................. 21

      B.  Plaintiffs Do Not Plausibly Allege The Interim Re-Recognition Was Unlawful .......... 23

CONCLUSION ............................................................................................................................ 30

# TABLE OF AUTHORITIES

**Cases**

*AARP v. U.S. Equal Emp't Opportunity Comm'n*,

   292 F. Supp. 3d 238 (D.D.C. 2017) ....................................................................... 24

*Abhe & Svoboda, Inc. v. Chao*,

   508 F.3d 1052 (D.C. Cir. 2007) ........................................................................... 12

*Accrediting Council for Indep. Colls. & Schs. ("ACICS") v. DeVos*,

   303 F. Supp. 3d 77 (D.D.C. 2018) .............................................................. *passim*

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,

   988 F.2d 146 (D.C. Cir. 1993) ............................................................................. 25

*Allina Health Servs. v. Sebelius*,

   746 F.3d 1102 (D.C. Cir. 2014) ........................................................................... 24

*Am. Nat'l Ins. Co. v. FDIC*,

   642 F.3d 1137 (D.C. Cir. 2011) ........................................................................... 11

*Armstrong v. Accrediting Council for Continuing Educ. & Training, Inc.*,

   168 F.3d 1362 (D.C. Cir. 1999), *opinion amended on denial of reh'g*,

   177 F.3d 1036 (D.C. Cir. 1999) ........................................................................... 29

*Ashcroft v. Iqbal*,

   556 U.S. 662 (2009) ............................................................................................. 12

*Bates v. Donley*,

   935 F. Supp. 2d 14 (D.D.C. 2013) ...................................................................... 12

*Baystate Med. Ctr. v. Leavitt*,

   545 F. Supp. 2d 20 (D.D.C. 2008),

   *aff'd*, 587 F. Supp. 2d 37 (D.D.C. 2008) ............................................................ 19

*Bell Atl. Corp. v. Twombly*,

   550 U.S. 544 (2007) ............................................................................................. 12

*Bennett v. Spear*,

   520 U.S. 154 (1997) ........................................................................................ 21, 22

*Browning v. Clinton*,

   292 F.3d 235 (D.C. Cir. 2002) ............................................................................. 11

*Comcast Corp. v. Fed. Commc'ns Comm'n*,

    579 F.3d 1 (D.C. Cir. 2009) ................................................................................ 24

*Cty. of Los Angeles v. Shalala*,

    192 F.3d 1005 (D.C. Cir 1999) .......................................................................... 19

*Fed. Trade Comm'n v. Standard Oil Co.*,

    449 U.S. 232 (1980) .......................................................................................... 22

*Food & Water Watch v. EPA*,

    5 F. Supp. 3d 62 (D.D.C. 2013) ........................................................................ 22

*Franklin v. Massachusetts*,

    505 U.S. 788 (1992) .......................................................................................... 21

*Fuller v. Winter*,

    538 F. Supp. 2d 179 (D.D.C. 2008) .................................................................. 27

*FW/PBS, Inc. v. City of Dallas*,

    493 U.S. 215 (1990) .......................................................................................... 14

*Heartland Reg'l Med. Ctr. v. Sebelius*,

    566 F.3d 193 (D.C. Cir. 2009) .............................................................. 25, 26, 27

*Herbert v. Nat'l Acad. of Scis.*,

    974 F.2d 192 (D.C. Cir. 1992) .......................................................................... 12

*Humane Soc'y of the U.S. v. Kempthorne*,

    579 F. Supp. 2d 7 (D.D.C. 2008) ...................................................................... 24

*In re U.S. Office of Personnel Mgmt. Data Sec. Breach Litig.*,

    928 F.3d 42 (D.C. Cir. 2019) ............................................................................ 18

*Jicarilla Apache Nation v. U.S. Department of Interior*,

    613 F.3d 1112 (D.C. Cir. 2010) ........................................................................ 27

*Lujan v. Defs. of Wildlife*,

    504 U.S. 555 (1992) .................................................................................... 11, 14

*Marshall Cty. Health Care Auth. v. Shalala*,

    988 F.2d 1221 (D.C. Cir. 1993) ........................................................................ 13

*Nat'l Family Planning & Reproductive Health Ass'n v. Gonzales*,

    468 F.3d 826 (2006) .......................................................................................... 17

*Ne. Hosp. Corp. v. Sebelius*,

   699 F. Supp. 2d 81 (D.D.C. 2010),

   *aff'd*, 657 F.3d 1 (D.C. Cir. 2011) ........................................................................ 19

*Palisades Gen. Hosp. Inc. v. Leavitt*,

   426 F.3d 400 (D.C. Cir. 2005) ...................................................................... 19, 20

*Portland Cement Ass'n v. EPA*,

   665 F.3d 177 (D.C. Cir. 2011) .............................................................................. 22

*Rempfer v. Sharfstein*,

   583 F.3d 860 (D.C. Cir. 2009) .............................................................................. 12

*Select Specialty Hosp. of Atlanta v. Thompson*,

   292 F. Supp. 2d 57 (D.D.C. 2003) .......................................................... 25, 26, 27

*Sw. Airlines Co. v. U.S. Dep't of Transportation*,

   832 F.3d 270 (D.C. Cir. 2016) .............................................................................. 22

*Tex. All. for Home Care Servs. v. Sebelius*,

   811 F. Supp. 2d 76 (D.D.C. 2011),

   *aff'd*, 681 F.3d 402 (D.C. Cir. 2012) .................................................................. 20

*Transitional Hospitals Corp. of Louisiana, Inc. ("THC") v. Shalala*,

   222 F.3d 1019 (D.C. Cir. 2000) ........................................................................... 25

*U.S. Ecology, Inc., v. U.S. Dep't of Interior*,

   231 F.3d 20 (D.C. Cir. 2000) ............................................................................... 14

*United States v. Emor*,

   785 F.3d 671 (D.C. Cir. 2015) .............................................................................. 14

*United Steel v. Mine Safety & Health Admin*,

   925 F.3d 1279 (D.C. Cir. 2019) ........................................................................... 24

*Warth v. Seldin*,

   422 U.S. 490 (1975) ....................................................................................... 13, 14

*Whitman v. Am. Trucking Ass'ns*,

   531 U.S. 457 (2001) .............................................................................................. 21

**Statutes**

20 U.S.C. § 1002(a) ....................................................................................................... 3

20 U.S.C. § 1011c ......................................................................................................... 4

20 U.S.C. § 1070 ...................................................................................................... 2

20 U.S.C. § 1087(c) ................................................................................................. 2

20 U.S.C. § 1087a .................................................................................................... 2

20 U.S.C. § 1087e(h) ............................................................................................... 3

20 U.S.C. § 1087ll ................................................................................................... 2

20 U.S.C. § 1099b .................................................................................................... 5

20 U.S.C. § 1099b(d) ............................................................................................... 4

20 U.S.C. § 1099c .................................................................................................. 3, 4

20 U.S.C. § 1099c(h)(2) ........................................................................................... 5

20 U.S.C. § 1232g .................................................................................................... 15

20 U.S.C. § 1099b(a) ............................................................................................... 4

20 U.S.C. § 1099b(c) ............................................................................................... 4

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ................................................................ 11

**Regulations**

34 C.F.R. § 99.31(a) ................................................................................................. 15

34 C.F.R. § 602.1 ..................................................................................................... 4

34 C.F.R. § 602.3 ..................................................................................................... 4

34 C.F.R. § 602.32(f) ............................................................................................... 4

34 C.F.R. § 602.34(c) ............................................................................................... 4

34 C.F.R. § 602.34(e) ............................................................................................... 4

34 C.F.R. § 602.34(g) ............................................................................................... 4

34 C.F.R. § 602.35(a) ............................................................................................... 4

34 C.F.R. § 602.36(e) ............................................................................................... 5

34 C.F.R. § 602.37(a) ............................................................................................... 4

34 C.F.R. § 602.37(d) ............................................................................................... 5

34 C.F.R. § 602.37(f) .............................................................................................. 5, 28

34 C.F.R. § 602.37(f)(2) ........................................................................................... 8

34 C.F.R. § 602.37(h) ............................................................................................... 28

34 C.F.R. § 600.2 ..................................................................................................... 9

34 C.F.R. § 600.3 ..................................................................................................... 9

34 C.F.R. § 674.33(g)(4)(i)(B)-(C) ........................................................................... 3

34 C.F.R. § 682.402 ................................................................................................... 3

34 C.F.R. § 685.214(c)(1)(i)(B)-(C) ........................................................................ 3

34 C.F.R. § 99.31(a) .................................................................................................. 3

58 Fed. Reg. 13336 (Mar. 10, 1993) ....................................................................... 29

63 Fed. Reg. 8659 (Feb. 20, 1998) .......................................................................... 15

81 Fed. Reg. 60683 (Sep. 2, 2016) .......................................................................... 15

**Other Authorities**

Closed School Discharge for Education Corporation of America,
    https://studentaid.ed.gov/sa/sites/default/files/education-corporation-america.pdf ................... 9

Education Corporation of America Closures,
    https://studentaid.ed.gov/eca-closures ..................................................................... 9

FSA, Closed School Discharge Changes,
    https://ifap.ed.gov/121318ClosedSchoolDischargeChanges.html .............................................. 3

Letter from Lynn B. Mahaffe, Acting Ass't Sec'y for Postsecondary Educ., to Colleagues (Dec.
    12, 2016), https://ifap.ed.gov/eannouncements/attachments
    /121316LetterToACICSInstitutionsAccredited.pdf ................................................................ 6

U.S. Department of Education, Federal Student Aid ("FSA"), Federal Student Aid Portfolio
    Summary, https://studentaid.ed.gov/sa/about/data-center/student/portfolio ............................... 2

## **INTRODUCTION**

Plaintiffs, two former students of the now-defunct Virginia College, seek to hold the Department of Education and its Secretary responsible for the fact that they received no credit for the courses in which they enrolled for the Fall 2018 semester. Plaintiffs sue not the college, nor the college's accreditor, but rather the federal government—based on a theory that the Secretary's April 3, 2018 decision to provisionally re-recognize the college's accreditor wrongly allowed the government to continue issuing loans for attendance at the school.

Plaintiffs' claims fail at the outset. First, Plaintiffs' alleged injury—their lack of academic credit for a semester in which they incurred student loan debt—is not traceable to the Secretary's decision. Plaintiffs' academic records show that their inability to obtain credit for Fall 2018 stemmed entirely from their own poor attendance, not the Secretary's decision to provisionally re-recognize their school's accreditor. And even if Plaintiffs' lack of academic credit were traceable to the Secretary's decision, the sole relief available in an APA suit such as this—setting aside the challenged decision—would not impact, let alone redress, the injuries claimed. Plaintiffs therefore cannot satisfy either the traceability or redressability requirements to establish standing. Second, Plaintiffs challenge a facially *interim* decision (and even acknowledge its provisional nature in their complaint), in contravention of the bedrock principle that an interim decision is not "final agency action" reviewable under the APA. And finally, even if the Court had jurisdiction, it should dismiss Court I because Plaintiffs fail to plausibly allege that there is anything inherently erroneous, let alone arbitrary and capricious, in the Secretary's decision. Because the Court lacks jurisdiction and Plaintiffs fail to state a plausible claim to relief, the Complaint should be dismissed.

# BACKGROUND

I.   STATUTORY AND REGULATORY BACKGROUND

### A.   The William D. Ford Federal Direct Loan Program

Under Title IV of the Higher Education Act of 1965 ("HEA"), 20 U.S.C. § 1070 *et seq.,*
the Department of Education (hereinafter "the Department") provides billions of dollars every year
through loan and grant programs to help students pay tuition for attending postsecondary
education. Pursuant to the HEA, the Department enters into agreements with institutions of higher
education to permit students to receive federal grants and loans to pay the cost of attendance. The
William D. Ford Federal Direct Loan Program ("Direct Loan Program"), the largest student loan
program authorized under Title IV, *see* 20 U.S.C. § 1087a *et seq.*, allows students to apply for and
receive Direct Loans from the federal government to pay their educational expenses, including
tuition and living expenses. *Id*. § 1087*ll*. As of the end of Fiscal Year 2018, the Department held
more than one trillion dollars in outstanding loan payments.[1]

### B.   Discharges of Direct Federal Loans

While students normally must repay any federal loans received, Congress carved out
exceptions to this general rule in the HEA. That statute specifically provides for discharges in
certain circumstances where a borrower is unable to complete an educational program due to the
school's closure. 20 U.S.C. § 1087(c) provides that:

> If a borrower who received … a loan made, insured, or guaranteed
> under this part and the student borrower … is unable to complete the
> program in which such student is enrolled due to the closure of the
> institution … then the Secretary shall discharge the borrower's

---

[1] *See* U.S. Department of Education, Federal Student Aid ("FSA"), Federal Student Aid Portfolio
Summary, https://studentaid.ed.gov/sa/about/data-center/student/portfolio.

> liability on the loan (including interest and collection fees) by repaying the amount owed on the loan.

Pursuant to this authority, the Department codified regulations providing for a discharge of student loans if a borrower withdrew from a school not more than 120 days prior to the school's closure, and did not complete their program with certain other conditions, including that the borrower did not transfer credits from the closed school to a new school to complete the program in which she was enrolled. 34 C.F.R. § 674.33(g)(4)(i)(B)-(C); 682.402(d)(1)(i); 682.402(d)(3)(ii)(c); 685.214(c)(1)(i)(B)-(C).[2] Students who meet these requirements, obtained loans to attend a school that closed on or after November 1, 2013, and do not enroll at another school that participates in federal student aid programs within three years of the date the prior schools closed will receive an *automatic* closed school discharge. Although the automatic grant of discharge will not take place until three years after a school's closure, nothing prevents an eligible borrower from applying for and receiving the closed school discharge earlier. *See* FSA, Closed School Discharge Changes, https://ifap.ed.gov/121318ClosedSchoolDischargeChanges.html (Dec. 13, 2018).

## C.  Oversight of Institutions Participating in Direct Loan Program

To be eligible to receive Title IV funds (as part of the Direct Loan Program and otherwise), an institution of higher education ("IHE") must meet certain requirements, including maintaining accreditation by a nationally recognized accrediting agency or association. *See* 20 U.S.C. § 1002(a) (incorporating 20 U.S.C. § 1001(a)(5)); *see also id.* § 1099c. Only IHEs accredited by a federally

---

[2]The HEA also authorizes the Secretary to identify other circumstances in which the Secretary will forgive student loans based on a school's conduct. It authorizes the Secretary to "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment" of a Direct Loan. 20 U.S.C. § 1087e(h). The Department has codified regulations permitting a borrower to "assert a borrower defense" against repayment for "any act or omission of the school attended by the student that relates to the making of the loan for enrollment at the school or the provision of educational services for which the loan was provided that would give rise to a cause of action against the school under applicable State law." 34 C.F.R. § 685.206(c)(1).

recognized accrediting agency can provide students with access to federal student aid programs. *See generally id.* § 1099c. Accrediting agencies are private entities designed to oversee IHEs and to serve as "reliable authorities regarding the quality of education or training offered by the institutions or programs they accredit." 34 C.F.R. § 602.1; *see also id.* § 602.3. They carry out that quality-assurance function through a variety of activities, including by promulgating standards designed to govern IHE quality and by assessing and monitoring compliance with those standards. *See, e.g.*, 20 U.S.C. §§ 1099b(a), (c).

The Secretary of Education (hereinafter the "Secretary") determines which accrediting agencies are recognized for purposes of the HEA. *See id.* § 1099; *see also* 34 C.F.R. § 602.1. An accrediting agency seeking recognition must demonstrate compliance with specific regulatory criteria, *id.* § 1099b(a); *see also* 34 C.F.R. pt. 602, Subpart B—The Criteria for Recognition, and must renew its recognition at a minimum of every five years, *see* 20 U.S.C. § 1099b(d). The HEA and its implementing regulations create an administrative process governing recognition decisions. *See generally* 34 C.F.R. pt. 602, Subpart C—The Recognition Process.[3] That process culminates with a recommendation decision made by a Senior Department Official ("SDO"), which can be appealed directly to the Secretary. *Id.* § 602.37(a).[4]

---

[3] The Department's Office of Postsecondary Education ("OPE" or "Department staff") first prepares a written draft analysis for the agency, and allows an opportunity for agency response. 34 C.F.R. § 602.32(f). After reviewing the agency's response, OPE issues a final analysis and report, including a recommended decision on recognition. *Id.* OPE forwards its analysis and recommendations to the National Advisory Committee on Institutional Quality and Integrity ("NACIQI"), a statutorily created federal advisory committee that advises the Secretary on matters related to postsecondary education and the recognition of accrediting agencies. *See generally* 20 U.S.C. § 1011c; 34 C.F.R. § 602.34(c). NACIQI considers the material provided by OPE and holds a public meeting. 34 C.F.R. § 602.34(e). Within ten days of the NACIQI meeting, the accrediting agency and the Department staff may submit written comments to the SDO regarding NACIQI's recommendation. *Id.* § 602.35(a). NACIQI votes on the proposed action, and thereafter its recommendation is forwarded to a designated senior Department official ("SDO"). *Id.* § 602.34(g).

[4] The Secretary "renders a final decision after taking into account the [SDO's] decision, the agency's written submissions on appeal, the [SDO's] response to the appeal, if any, and the entire

If, "while a decision regarding the [accrediting] agency's recognition is pending before the Secretary," "relevant and material information pertaining to an agency's compliance with recognition criteria, but not contained in the record, comes to the Secretary's attention," the Secretary either "[r]efers the matter to Department staff for review and analysis" or "[p]rovides the information to the agency and the [SDO]," permits the agency to respond, provides the SDO with an opportunity to respond to the accrediting agency, and issues a recognition decision. 34 C.F.R. § 602.37(f). If the Secretary or the SDO acting as the Secretary "withdraws the recognition of any accrediting agency, … the Secretary may, notwithstanding the withdrawal, continue the eligibility of the institution[s] of higher education" accredited by that agency for federal student aid programs "for a period not to exceed 18 months from the date of the withdrawal of recognition." 20 U.S.C. § 1099c(h)(2).

## II.    ACICS

The Accrediting Council of Independent Colleges and Schools (hereinafter "ACICS") is a nonprofit organization that, until late 2016, was recognized by the Department as an accrediting agency for certain institutions of higher education. *See Accrediting Council for Indep. Colls. & Schs. ("ACICS") v. DeVos*, 303 F. Supp. 3d 77, 88 (D.D.C. 2018). In January 2016, ACICS submitted a Petition for Continued Recognition. *Id*. In March 2016, the Department sent ACICS a list of questions divided into two parts: Part I contained questions regarding institutions accredited by ACICS that had been the subject of investigations and lawsuits, while Part II requested further

---

record before the [SDO]." 34 C.F.R. § 602.37(d). If the Secretary determines the accrediting agency is noncompliant, she has the discretion to either (1) deny, limit, suspend, or terminate recognition, or (2) continue the agency's recognition for a specified period. *Id.* § 602.37(d) (incorporating the procedures provided in 34 C.F.R. § 602.36(e)); *see also* 20 U.S.C. § 1099b. Like the SDO, the Secretary may exercise her discretion to invoke the latter option where she determines that the noncompliant agency will achieve compliance within 12 months or less. 34 C.F.R. §§ 602.37(d); 602.36(e)(2)-(3).

information and documentation related to ACICS's performance on particular recognition criteria. ACICS submitted the response to Part I on April 1, 2016, and on May 19, 2016, submitted its Part II responses, which consisted of a 27-page single-spaced narrative, approximately 36,000 pages of documents relating to adverse actions ACICS had taken against schools, accreditation decisions it had made, and communications between ACICS and institutions identified by the Department. *Id*. at 89-90.

In September 2016, the SDO, without considering the Part II responses, found ACICS noncompliant with multiple recognition criteria the Department staff had identified in their report. *Id*. at 92. The SDO took notice of "remedial efforts currently underway" at ACICS, including that more than half of the twenty-one problems identified by Department staff had been remedied by July 2016, but determined nonetheless that ACICS could not come into full compliance within twelve months. *Id.* The SDO therefore terminated ACICS's recognition. *Id.*

ACICS appealed this decision to the Secretary, who issued his final decision on December 12, 2016, finding ACICS noncompliant with at least five recognition criteria. *Id.* at 93; *see also* Decision of the Secretary, *ACICS*, Docket No. 16-44-O at 1 (Dec. 12, 2016) (hereinafter "de-recognition decision"). The Secretary advised institutions accredited by ACICS that he would continue their eligibility, with conditions, to participate in the Title IV programs for a period not to exceed 18 months from the date of ACICS's loss of recognition (i.e. June 12, 2018).[5] This effectively required institutions to find alternative accreditation by that date.

---

[5] *See* Letter from Lynn B. Mahaffe, Acting Ass't Sec'y for Postsecondary Educ., to Colleagues (Dec. 12, 2016), https://ifap.ed.gov/eannouncements/attachments/121316LetterToACICSInstitutionsAccredited.pdf.

A.   *ACICS* Litigation

On December 15, 2016, ACICS filed suit in this Court seeking judicial review of the Secretary's withdrawal of recognition. *See ACICS*, 303 F. Supp. 3d at 93. This Court denied ACICS's requests for a Temporary Restraining Order and Preliminary Injunction, and, on March 23, 2018, rejected ACICS's argument that the Secretary violated the APA by failing to discuss all of the recognition criteria as to which ACICS had been found noncompliant. *Id.* at 93, 122. It found, however, that the Secretary had violated the APA by failing to consider the Part II responses (and ACICS placement verification and data integrity programs and procedures) that were before the agency. *Id.* at 122-23. The Court noted that it was "unable to conclude that no part of the 36,000-page Part II submission would have affected the Secretary's determination that [ACICS] could not come into compliance within twelve months," *id.* at 107, 113, and that, on remand, the Department may consider some or all of the evidence of the improvements ACICS made "or take into account new evidence." *Id.* at 122.

The Court found the "proper remedy is to remand the case to the Secretary so that she may consider evidence in the first instance." *Id.* at 121-22. In support of this remedy, the Court relied on cases where the remand included vacatur of a prior agency decision. *See id.* at 122. The Court issued an order granting in part and denying in part ACICS's motion for summary judgment and remanding to the Secretary "for further proceedings consistent with the Court's" opinion. Order, *ACICS v. DeVos*, Civ. No. 1:16-cv-02448-RBW (D.D.C.) (Mar.23, 2018) (ECF No. 75).

B.   Post-*ACICS* Proceedings

As an initial step to comply with this Court's remand, the Secretary issued an Order on April 3, 2018, explaining that "[a]s a result of the district court's remand, there is no final decision on the recognition petition that ACICS submitted to the Department … regarding its recognition period that was set to expire in December 2016." Order, *ACICS*, Docket No. 16-44-O (Apr. 3,

2018) ("interim re-recognition"). Accordingly, the Secretary declared that ACICS's status as a federally recognized accrediting agency "is restored effective as of December 12, 2016" and that ACICS "will remain in that status" while the Secretary "reach[es] a final decision on [ACICS's] January 2016 petition." *Id.* The Secretary stated that, "[c]onsistent with the court's remand," she would "conduct a further review of ACICS's 2016 petition for recognition," and that the "process described in 34 C.F.R. § 602.37(f)(2)" would provide the framework for this review. *Id.*[6] This decision effectively preserved the status quo while the Department reviewed the additional materials relevant to ACICS's petition, as commanded by this Court.

Pursuant to the April 3 interim re-recognition order, the Department reconsidered ACICS's pending petition for re-recognition. On September 28, 2018, the SDO responded to ACICS's submission and recommended that the Secretary grant ACICS 12 months of continued recognition to come into full compliance with requisite criteria. *See* Senior Dep't Official's Resp. to ACICS, *ACICS*, Docket No. 16-11-O (Sept. 28, 2018). The SDO found ACICS was now in compliance with 19 of the applicable 21 recognition criteria. On November 21, 2018, the Secretary agreed with the SDO and granted ACICS 12 months of continued recognition to demonstrate compliance with the remaining two criteria. *See* Decision of the Sec'y, *ACICS*, Docket No. 16-44-O (Nov. 21, 2018).

### C.    ACICS's Accreditation of ECA

ACICS served as the accreditor for ECA schools, including Virginia College-Richmond. *See* Am. Compl. ¶ 1. ACICS withdrew ECA's accreditation effective December 19, 2018; this meant that Virginia College, the school attended by Plaintiffs, lost its accreditation as of this date

---

[6] This regulation, as described above, governs situations in which "relevant and material information pertaining to an agency's compliance with recognition criteria, but not contained in the record, comes to the Secretary's attention" "while a decision regarding [an accreditor's] recognition is pending before the Secretary." 34 C.F.R. § 602.37(f)(2).

as well. *See* Receiver's Initial Report, *VC Macon, GA LLC v. Virginia College LLC*, Civ. No. 5:18-cv-00388-TES (M.D. Ga.) (Dec. 12, 2018) (ECF No. 99) at 10. ECA closed all of its schools, including the Virginia College chain, that same month. Am. Compl. ¶ 6. During the ensuing wind-down process of ECA schools, the Department "requested that the wind-down should attempt to achieve the softest landing for the most students possible." *Id*. Pursuant to this request:

> [T]he Receiver made accommodations to the necessary wind-down plans to allow an expedited teach-out[7], followed by a domino-closing schedule of the campuses. According to this schedule, those campuses that did not have any academic modules being completed, or graduations be[ing] completed . . . would be closed on December 7, 2018. All other campuses would remain open until the date the modules or graduations at the respective campuses were completed, after which those campuses would also close.

*Id.* at 10-11. In accordance with this plan, Virginia College—Richmond closed on December 18, 2018, after the current term at that school was completed. *See* https://studentaid.ed.gov/eca-closures (reflecting that ECA told the Department its institutions would "cease offering educational instruction at the end of the current academic term" and specifying December 18, 2018 as closure date for Virginia College-Richmond). In connection with this closing, the Department offered information to affected students explaining how to obtain a "closed school discharge" of their ECA-related loans or transfer credits obtained at ECA schools. *See* https://studentaid.ed.gov/sa/sites/default/files/education-corporation-america.pdf.

## III.   THIS LAWSUIT

More than a year after the Secretary's interim decision re-recognizing ACICS, Plaintiffs filed the instant action. *See* ECF No. 1, Compl. Plaintiffs are former Virginia College students who borrowed financial aid for Fall 2018, but did not receive academic credit for that semester. They

---

[7] A "teach-out" describes the process surrounding the closure of an institution before all students have been able to complete their program of study, and may include a written agreement to allow students to complete their studies at an alternate institution. *See* 34 C.F.R. §§ 600.2, 602.3.

claim in Count I that the Secretary was "wrong" in understanding this Court's opinion in *ACICS* to have vacated the Secretary's December 12, 2016 de-recognition of ACICS and that her April 3, 2018 provisional re-recognition was therefore arbitrary and capricious. Am. Compl. ¶¶ 102-03, ECF No. 14. According to Plaintiffs, ACICS should have remained un-recognized during the pendency of the remand—unless and until the Secretary made a final decision that ACICS should be re-recognized. *Id.* ¶ 102. Plaintiffs claim that, absent the Secretary's unlawful interim re-recognition in April 2018, ACICS's recognition would have lapsed on June 12, 2018 because ECA schools could find no alternate accreditor besides ACICS. *Id.* ¶¶ 77, 80-81. Thus, the theory goes, the Secretary's April 2018 decision caused ECA schools to remain accredited and eligible for federal student loans past June 12, 2018—which, in turn, allowed ECA schools to enroll students (including Mr. Passut and Mr. Kaiser) for the Fall 2018 term and for those students to borrow money from the Department. *Id.* ¶¶ 80-82. Plaintiffs blame their failure to receive academic credit for the Fall 2018 term on ACICS's withdrawal of ECA's accreditation, claiming that "[d]uring the Fall 2018 term, Mr. Passut and Mr. Kaiser were completing fieldwork requirements for their degree that were not scheduled to be completed until late December 2018 or January 2019," *id.* ¶ 83, and that "[b]ut for the closure of Virginia College's Richmond campus on December 18, Mr. Passut and Mr. Kaiser would have been able to finish their fieldwork, and therefore receive credit for the Fall 2018 term." *Id.* ¶ 87. Plaintiffs seek to pin this failure to receive credit on the Department despite their complaint containing no allegation that the Department caused the collapse of their school.

Plaintiffs further claim in Count II that the Secretary's interim re-recognition violates the APA because "a disinterested observer could conclude that the officials charged with considering ACICS's recognition … have 'in some measure adjudged the facts as well as the law' prior to the proceeding." *Id.* ¶ 111 (citation omitted). The decision is invalid, they allege, because the involved

officials exhibited indicia of bias including communications with industry representatives, failure to consider evidence from their staff that counseled against recognition, misrepresentations about evidence from other accreditors supporting continued recognition, numerous ties to and potential conflicts of interest with the for-profit college industry, and previous statements regarding the value (or lack thereof) of the accreditation process.

Plaintiffs seek vacatur of the interim re-recognition and an injunction requiring the government to "cancel, discharge, forgive and/or otherwise nullify Plaintiffs' outstanding federal loan balances, to refrain from attempting to collect Plaintiffs' outstanding federal loan balances, and to refund any payments already received" for loans during the relevant period. *See* Am. Compl., Prayer for Relief, at ¶¶ 2-3. In particular, they seek a declaration that the Secretary's interim re-recognition violated the APA "and that any loans issued by the Department of Education to pay tuition or other expenses at ECA schools during the interim recognition period are null and void, or otherwise unenforceable." *Id.*, ¶ 1. Plaintiffs seek to proceed on behalf of a "Class of individuals to whom the Department issued loans for tuition and expenses at ECA schools after June 12, 2018." Am. Compl. ¶ 8.

## **STANDARD OF REVIEW**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must plead allegations sufficient to establish the court's jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). When considering such a motion, the court must accept all well-pleaded allegations as true. *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). The Court need not, however, accept inferences unsupported by facts alleged in the complaint or that amount to mere legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In evaluating subject-matter jurisdiction, the Court may look beyond the complaint to "undisputed

facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "plausibility" standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). And while the Court accepts well-pleaded factual allegations as true, "mere conclusory statements" and "legal conclusion[s] couched as ... factual allegation[s]" are "disentitle[d] ... to th[is] presumption of truth." *Id.* at 678, 681 (citation omitted). Although the court generally may not rely on material outside the pleadings under Rule 12(b)(6), it may consider materials incorporated into the complaint by reference and judicially noticeable materials without converting the motion into one for summary judgment. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

With respect to an APA claim, "a court may consider the administrative record and public documents without converting the motion into a motion for summary judgment, or it may convert the motion into a motion for summary judgment under Rule 12(d)." *Bates v. Donley*, 935 F. Supp. 2d 14, 17 (D.D.C. 2013) (internal citation omitted). "[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009) (alterations in original) (citation omitted); *see also Bates*, 935 F. Supp. 2d at 17. "The entire case on review is a question of law, and only a question of law. And because a court can fully resolve any purely legal question on a motion to dismiss, there is no inherent barrier to reaching the merits at the 12(b)(6) stage ... and there is no real distinction in this context

between the question presented on a 12(b)(6) motion and a motion for summary judgment."

*Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993) (citation

omitted).

## ARGUMENT

### I.     This Court Lacks Jurisdiction Because Plaintiffs Lack Standing

Plaintiffs cannot challenge the Interim Order for one simple reason: They have no standing

to maintain this suit. First, Plaintiffs' academic records (on which this Court can rely to determine

its subject-matter jurisdiction) show that their claimed "injuries" are entirely self-inflicted.

Although Plaintiffs claim that, "[b]ut for the closure of Virginia College's Richmond campus on

December 18, Mr. Passut and Mr. Kaiser would have been able to finish their fieldwork, and

therefore receive credit for the Fall 2018 term," both students' records establish that their own poor

attendance and refusal to complete course requirements—not the school's closure—caused their

failure to receive credit. *See* Am. Compl. ¶ 87. Because their "injury" was wholly self-inflicted,

Plaintiffs cannot trace their harm to the Secretary's interim decision. And even if Plaintiffs *had*

been harmed by that decision, this Court cannot afford any relief capable of redressing their

claimed injuries, much less the specific relief Plaintiffs seek. Plaintiffs' student loans would not

be affected by the outcome of this suit, and for this additional reason their claims must be dismissed

for lack of standing.

### A. Plaintiffs' lack of credit is in no way traceable to the Secretary's decision or the school's collapse.

Plaintiffs' complaint must be dismissed because they cannot meet the second prong of the

familiar standing analysis. The doctrine of constitutional standing, an essential aspect of the Article

III case-or-controversy requirement, demands that a plaintiff have "a personal stake in the outcome

of the controversy [so] as to warrant his invocation of federal-court jurisdiction." *Warth v. Seldin*,

422 U.S. 490, 498 (1975) (citation omitted). At its "irreducible constitutional minimum," the doctrine requires a plaintiff, as the party invoking the Court's jurisdiction, to establish three elements: (1) a concrete and particularized injury-in-fact, either actual or imminent; (2) a causal connection between the injury and defendants' challenged conduct, such that the injury is "fairly … trace[able] to the challenged action of the defendant"; and (3) a likelihood that the injury suffered will be redressed by a favorable decision. *Defs. of Wildlife*, 504 U.S. at 560 (citation omitted). "[A] deficiency on any one of the three prongs suffices to defeat standing." *U.S. Ecology, Inc., v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000). As the parties invoking the Court's jurisdiction, Plaintiffs bear the burden "clearly to allege facts demonstrating" each of these three elements. *Warth*, 422 U.S. at 518; *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (confirming that plaintiff has burden "clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute") (citation omitted). And a court may, of course, "consider evidence outside the complaint" when "deciding a motion to dismiss on jurisdictional grounds, such as standing." *United States v. Emor*, 785 F.3d 671, 677 (D.C. Cir. 2015).

There is no causal connection whatsoever between Plaintiffs' alleged injury—their lack of academic credit for a semester in which they were "saddl[ed] … with substantial student loan debt," Am. Compl. ¶ 1—and the challenged Department decision. Plaintiffs surely cannot claim confusion as to their reason for having "received no credit for the several months of time and work they spent in the Virginia College program in the Fall 2018 term." *Id.* ¶ 88. Both students were enrolled in "Level II Fieldwork," *i.e.* an outside placement, that term, and both failed even to come close to meeting the requisite hours to complete their fieldwork. According to the school's academic records, Mr. Kaiser completed only 248.5 out of 371 scheduled hours, while Mr. Passut performed only slightly better, working 249.15 out of the same quantity of scheduled hours.

*See* Exhs. C (Passut Attendance Records), G (Kaiser Attendance Records).[8] Indeed, notes entered

by school officials in the students' files confirm the self-inflicted nature of the students' lack of

credit. For example, Mr. Kaiser's records show that he asked by email and in person "to withdraw

from this fieldwork experience effective immediately" on November 3 and 5, 2018, after his

fieldwork coordinator met with him on November 2 and discussed "that the student was often late,

did not follow through with assignments correctly, and was in danger of failing at midterm."

*See* Exh. H (Kaiser Activity History). That same week Mr. Passut also sought to withdraw due to

a "medical condition," explaining that "he could not return to the site due to being overwhelmed

and not feeling welcome by the staff." *See* Exh. D (Passut Activity History). The records further

show that school officials advised both students that withdrawing from fieldwork could

significantly set back completion of their programs. *Id.* Finally, both students' Academic History

and Advising Reports show that they *dropped* their fieldwork for the term ending December 18,

2018, while their transcripts show that both students received grades of "WD" (for "withdraw")

for that term. *See* Exhs. E (Passut Transcript), F (Passut Academic History), I (Kaiser Transcript),

---

[8] These documents are educational records subject to the Family Educational Rights and Privacy Act (FERPA). The Department has authority under regulations promulgated under FERPA, 20 U.S.C. § 1232g and 34 CFR Part 99, to obtain educational records. Specifically, under 34 CFR 99.31(a)(3)(iii), the records may be disclosed to the Department. They could also be disclosed to the Department under 34 CFR 99.31(a)(4)(i)(D) for the purpose of enforcing the terms and conditions of the loans. It is routine for the Department to request and obtain educational records from institutions.

Once the Department received the students' records, they became part of the Department's Privacy Act System of Records under the System of Records Notice for "Common Services for Borrowers." 81 Fed. Reg. 60683, 60687. This SORN provides a routine use for litigation disclosures at section (5)(a)(i), and (5)(b) specifically authorizes disclosure to DOJ where necessary for litigation. Disclosure of these records to the Court is pursuant to (5)(c), which provides for disclosure to an adjudicative body as necessary for litigation, as well as the DOJ Civil Division SORN, Privacy Act of 1974, Notice of Modified Systems of Records, 63 Fed. Reg. 8659, 8666 (Feb. 20, 1998), which includes a routine use for disclosures of records in court that are relevant to litigation.

J (Kaiser Academic History). These facts prove equally fatal to Plaintiffs' assertions that their school's closure cost them several months of lost income by delaying their graduation date. *See* Am. Compl. ¶ 90. Had they completed the Fall 2018 term at Virginia College when they were supposed to by finishing their fieldwork, they would have received credit for that term (as did many of their peers, *see* Exhibit A) and, presumably, would have been able to transfer those credits as they did credits for other terms and graduate on time.

Significantly, the school records contain no indication that Mr. Passut and Mr. Kaiser were permitted to complete their fieldwork hours after the Fall 2018 term ended and still receive credit *after* dropping their fieldwork for that term. *See* Am. Compl. ¶ 83. Plaintiffs' conclusory assertion that their fieldwork requirements "were not scheduled to be completed until late December 2018 or January 2019," *id.*, is contradicted by the school's records. And even if the school in fact permitted them to somehow finish their requirements a month or more after the term ended, it is entirely speculative whether they would have done so, in light of these students' failure to complete the hours when due—making Plaintiffs' claim that, but for the school's closure, they would have been able to finish their fieldwork and receive credit for the term, Am. Compl. ¶ 87, wholly speculative.

These facts—which are supported by an agency declaration of authenticity, *see* Exh. A, Mecca Decl., not reasonably subject to dispute, and pertinent to the Court's jurisdiction—make clear that Plaintiffs' lack of credit for Fall 2018 stemmed entirely from their own poor attendance, not the Secretary's decision to provisionally re-recognize their school's accreditor. Had the Plaintiffs' hours for that term not fallen woefully short of the scheduled hours, they likely would have received credit for their efforts, given that the school remained open (and they remained working) through December 18, 2018. Indeed, as explained by the agency's declarant (who specifically was tasked with duties related to ECA's closure), data provided to the government by

16

ECA shows "that students enrolled at Virginia College-Richmond who completed course requirements did receive credit" for the term ending December 2018, meaning that "the closure of Virginia College's Richmond Campus did not result in a failure to receive credit for students who met course requirements." *See* Exh. A, Mecca Decl.[9] The D.C. Circuit has "consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing," both because "[s]uch harm does not amount to an 'injury' cognizable under Article III" and, "even if self-inflicted harm qualified as an injury it would not be fairly traceable to the defendant's challenged conduct." *Nat'l Family Planning & Reproductive Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (2006). This case must therefore be dismissed.

**B. Even if Plaintiffs' lack of academic credit were traceable to the Secretary's decision, the relief available in this APA suit would have no effect on Plaintiffs' loans.**

Plaintiffs' complaint is equally deficient with regard to the third prong of standing; even were this Court to agree that the Secretary's decision was unlawful (and even if it caused Plaintiffs' injuries), the remedies available under the APA would not redress the injuries claimed. Here, Plaintiffs do not claim that the Interim Order caused them any *direct* injury, but instead contend that the Secretary's decision harmed them indirectly through a remarkably attenuated chain. According to Plaintiffs: (1) the Secretary's decision to preserve the status quo while complying with this Court's remand, as set forth in the Interim Order, caused ACICS to remain a recognized

---

[9] These facts likewise doom Plaintiffs' putative class claims, which allege that "in December 2018, Virginia College shut its doors, leaving many students with thousands of dollars in debt and nothing in exchange." Am. Compl. ¶ 6. Plaintiffs have failed (and likely will be unable) to identify any putative plaintiff actually harmed by the school's closure at end of term, particularly since students who met course requirements did receive credit. *See* Exh. A, Mecca Decl. As of April 18, 2019, the Department had processed closed-school loan discharges for former ECA students in excess of $15 million and estimated that total approved discharges will exceed $142 million. *See* Receiver's Fifth Report, *VC Macon, GA LLC v. Virginia College LLC*, M.D. Ga. Civ. No. 5:18-cv-00388-TES (April 28, 2019) (ECF No. 207) at 5.

accreditor through the summer of 2018; (2) ACICS's provisional re-recognition then permitted Virginia College to remain open for Fall 2018 without seeking alternate accreditation; (3) ACICS's continued accreditation "enabled Virginia College to enroll students … and allowed the Department to issue loans to them"; (4) Virginia College "shuttered its doors" several months later, for no reason tied to the Department's actions; (5) and, finally, the school's closure left Plaintiffs with thousands of dollars in student loans borrowed to attend a semester for which they received no credit. *See* Am. Compl., ¶¶ 51, 77-91. The link between the Interim Order and Plaintiffs' alleged injuries is highly tenuous at best—so indirect, in fact, that even were the Court to set aside the Secretary's provisional decision, Plaintiffs' student loans would in no way be impacted, thereby affording them no relief whatsoever.

In their complaint Plaintiffs elide the mismatch between the challenged decision and the harm allegedly suffered, offering two theories as to how their loans could be discharged should they prevail in this suit. First, Plaintiffs allege that, "[b]ecause the Department's decision to restore ACICS's accreditation was unlawful … any loans issued by the Department for the purposes of attending those schools during the interim recognition period were unlawful and void *ab initio.*" Am. Compl. ¶ 105. But nowhere do Plaintiffs claim that their loans would automatically be discharged by a finding that the Interim Order was arbitrary and capricious; nor do they identify any legal or regulatory mechanism for discharging their loans should the Interim Order be set aside. In other words, Plaintiffs invite the Court to assume that a successful outcome would cause their loans to vanish—without providing any legal basis, or even factual allegations, to suggest discharge would somehow result from a finding that ACICS's provisional re-recognition was unlawful. Indeed, undersigned counsel have been unable to locate *any* authority even suggesting that student loans can be voided based on predicate unlawful agency action. This novel, unsupported assertion is patently insufficient to establish that a favorable decision would redress

Plaintiffs' harms, as courts "do not assume the truth of legal conclusions or accept inferences that are unsupported by the facts alleged in the complaint." *In re U.S. Office of Personnel Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 54 (D.C. Cir. 2019).

Second, Plaintiffs ask in the alternative that the Court "exercise its equitable authority to vacate, cancel, or otherwise nullify any loans issued by the Department during the interim recognition period, even if those loans are not void *ab initio*." Am. Compl. ¶ 106. But this the Court plainly cannot do, for under controlling precedent and "settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the correct legal standards." *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005) (citations omitted). The D.C. Circuit explicitly has rejected an argument that a district court can order "make-whole relief" "to ensure that the claimant is afforded the same outcome that would have followed if the agency had acted correctly," explaining that *no jurisdiction exists* to order specific relief because, "[u]nlike a district court managing a 'garden variety civil suit,' a district court reviewing a final agency action[10] does not perform its normal role but instead sits as an appellate tribunal." *Id.* (citations omitted). When a reviewable agency decision is found to be unlawful, "the district court ha[s] jurisdiction only to vacate the Secretary's decision … and to remand for further action consistent with its opinion." *Id.* This Court cannot, therefore, order the agency to "vacate, cancel, or otherwise nullify any loans," Am. Compl. ¶ 106, because it is "error" for a district court "to devise a specific remedy for the Secretary to follow" after finding an agency decision unlawful. *Cty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir 1999); *see also Ne. Hosp. Corp. v. Sebelius*, 699 F. Supp. 2d 81, 96 (D.D.C. 2010) (denying request for specific

---

[10] As demonstrated *infra*, Section II(A), here there is no final agency action to review, providing a further reason this case must be dismissed.

relief because "it would be error to do anything more" than vacate decision), *aff'd*, 657 F.3d 1 (D.C. Cir. 2011); *Baystate Med. Ctr. v. Leavitt*, 545 F. Supp. 2d 20, 58 (D.D.C. 2008) (same), *aff'd*, 587 F. Supp. 2d 37 (D.D.C. 2008).

This analysis is equally applicable to both counts in Plaintiffs' complaint. Count Two, which alleges a procedural violation of the APA, requests the same unavailable relief discussed above. *See* Am. Compl. ¶ 112 (urging the Court to find "Class members' loans[] are therefore unenforceable" due to alleged bias of decisionmaker). Even were this Court to find the Interim Order unlawful (and regardless of the basis), it could do no more than vacate the decision; it cannot further order "make-whole relief," *Palisades Gen. Hosp.*, 426 F.3d at 403, to discharge or otherwise affect Plaintiffs' loans. This means the Court could not, as Plaintiffs urge, declare the relevant loans "null and void [] or otherwise unenforceable," nor can it "vacate the interim recognition decision *and any resulting loans* issued … to pay tuition or other expenses at ECA schools," or "enjoin Defendants … to cancel, discharge, forgive and/or otherwise nullify Plaintiffs' outstanding federal loan balances." Am. Compl. Request for Relief, ¶¶ 1-3 (emphasis added). Stated differently, the only relief the Court *can* order, setting aside the Secretary's decision and remanding to the agency, would have no impact on Plaintiffs' loans (or, indeed, on ACICS's status overall as an accreditor, given that its interim re-recognition was made final just five months later, a final agency action *not* challenged here). This suit must therefore be dismissed for lack of redressability. "Where, as here, overturning a particular agency action would not alter the final outcome, redressability remains unsatisfied." *Tex. All. for Home Care Servs. v. Sebelius*, 811 F. Supp. 2d 76, 98 (D.D.C. 2011), *aff'd*, 681 F.3d 402 (D.C. Cir. 2012).

## II.     Counts I  Does Not State A Reviewable Claim Under Section 706(2) of the APA

Even if Plaintiffs' injuries were traceable to the Secretary's decision *and* redressable through a favorable outcome (which they are not), both counts should be dismissed because they

do not state a reviewable claim. Plaintiffs seek relief from their student loans by challenging the Secretary's interim re-recognition decision, but that order is, by Plaintiffs' own characterization, provisional—and thus not reviewable, final agency action. Even if it were reviewable, Count I should be dismissed because Plaintiffs do not plausibly allege that the interim re-recognition was unlawful.

### A.      There is No Final Agency Action To Review

Plaintiffs' complaint utterly ignores the final agency action requirement for APA review, save for a conclusory and self-contradictory assertion that "Defendants' interim recognition decision constitutes 'final agency action.'" Am. Compl. ¶ 100. That assertion is impossible to square with the fact that Plaintiffs themselves *acknowledge* the provisional nature of the Interim Order. *See, e.g.*, Am. Compl. § V ("Secretary DeVos Unlawfully Restores ACICS's Recognition On An Interim Basis"); *id.* ¶ 51 n. 56 (referring to "Interim Recognition Decision"); *id.* ¶ 92 (seeking to certify class defined by loan disbursement during "interim recognition period); *id.* § VI (conceding that recognition was restored "[o]n [a] [f]inal [b]asis" *after* challenged decision). Indeed, as even Plaintiffs' characterizations make clear, the challenged decision here is non-final—meaning that there is nothing for this Court to review.

Agency action is reviewable only if (1) it "mark[s] the 'consummation' of the agency's decisionmaking process," meaning it is neither tentative nor interlocutory, and (2) the action determines rights or obligations or imparts legal consequences. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted). The Supreme Court specifically has underscored that "[a]n agency action is not final if it is only … tentative," and that the "core question is whether the agency has completed its decisionmaking process … ." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992) (internal citation omitted). "Only if the '[agency] has rendered its last word on the

matter' in question … is its action 'final' and thus reviewable." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 479 (2001) (internal citation omitted).

There can be no plausible argument here that the Secretary's decision constitutes final agency action amenable to APA review. Even putting aside that Plaintiffs themselves characterize it as an "Interim Recognition Decision" preceding a later final decision, the Secretary's determination is facially non-final, and courts often give great weight to an agency's characterization of the finality of its action. *Food & Water Watch v. EPA*, 5 F. Supp. 3d 62, 81-82 (D.D.C. 2013) (courts look in part to "the agency's own characterization of [its] action" in determining whether agency action is final). The Secretary recognized that, "[a]s a result of the district court's remand, there is no final decision on the recognition petition that ACICS submitted," and that she would "conduct a further review" to determine whether recognition is warranted. *See* Interim Order at 1. The decision makes clear that the Secretary decided to maintain the status quo "until such time as [she] reach[ed] a final decision" on ACICS's petition. *Id.* And the Interim Order was superseded by a final decision only five months later. Am. Compl. ¶ 67; *see also Sw. Airlines Co. v. U.S. Dep't of Transportation*, 832 F.3d 270, 275 (D.C. Cir. 2016) (explaining that courts determine finality in part by "look[ing] to the way in which the agency subsequently treats the challenged action"). A prefatory determination like the Interim Order "is not a definitive statement of position," but rather a "threshold determination that further inquiry is warranted." *Fed. Trade Comm'n v. Standard Oil Co.*, 449 U.S. 232, 241 (1980). Nor were these separate determinations—both the Interim Order and the final decision were decisions on ACICS's recognition petition, in specific response to this Court's remand. True, the decision here had *a consequence* in the sense that ACICS was allowed to continue operating—but the fact a decision may have some concrete impact is insufficient to render it "final agency action" for APA purposes. *See Bennett*, 520 U.S. at 177-78 (agency action reviewable only if it determines rights or

obligations and *also* "mark[s] the 'consummation' of the agency's decisionmaking process"). An agency decision to continue a process of review while gathering and reviewing additional information simply is non-final and thus unreviewable. *Portland Cement Ass'n v. EPA*, 665 F.3d 177, 193 (D.C. Cir. 2011).

**B.     Plaintiffs Do Not Plausibly Allege The Interim Re-Recognition Was Unlawful**

Count I should be dismissed for the further reason that it is premised on an error of law. Plaintiffs claim the Secretary's interim re-recognition was unlawful because (1) it was based on the Secretary's "conclusion" that there was "no final decision on the recognition petition that ACICS submitted," and (2) the Secretary's "analysis" is "wrong." Am. Compl. ¶ 103. But Plaintiffs fail to demonstrate that there is anything inherently erroneous in the Secretary's decision and thus fail to state a claim.

The complaint merely offers the conclusory allegation that the 2016 de-recognition decision "was not vacated by the [*ACICS*] Court." *See* Am. Compl. ¶ 102; *see also id.* ¶¶ 3, 4, 49, 50. Plaintiffs hinge that argument on the fact that "[n]either the Court's order nor its opinion made any reference to vacating the Department's recognition decision," *Id.* ¶ 49, but they otherwise do little to explain why it is reasonable to believe the Court intended to leave intact the de-recognition decision during remand, especially considering that the *ACICS* court both explicitly relied on cases vacating prior agency action and instructed the Secretary to review "de novo." *See* 303 F. Supp. 3d at 121-22. Absent a clearer expression of the court's intent *not* to vacate, there is no reason to presume the Secretary's interpretation was erroneous, let alone arbitrary and capricious. Even if the Court is not persuaded that the Secretary correctly construed *ACICS* as vacating the de-recognition decision, to the extent the two alternative ways to understand *ACICS* are equally valid, the Secretary's action was not arbitrary and capricious.

The main support Plaintiffs offer to bolster their belief that the Secretary's interpretation of the *ACICS* opinion was erroneous is the observation that the Court declined to grant the specific relief that ACICS requested. "ACICS [had] asked the Court to '[v]acat[e] the Secretary of Education's decision to terminate ACICS's recognition … and to '[o]rder[] the Secretary of Education to return ACICS's Petition for recognition to the Department Staff for reconsideration." *See* Am. Compl. ¶ 39 (noting that court declined to grant this relief, and citing *ACICS* Am. Compl.). But the fact that the Court declined to grant all of the specific relief Plaintiffs requested does not demonstrate an intent to leave in place the de-recognition decision during "de novo" review. Rather, the Court's decision specifically explained that it would not grant Plaintiffs' requested remedy because that remedy involved remand to the Department staff (as opposed to remand to the Secretary), and ACICS had "cite[d] no authority that compel[led] the court to do so." *ACICS*, 303 F. Supp. 3d at 122. In light of this, and the Court's explicit reliance on cases that vacated agency action in connection with remands, *id.* (*see also* pages 27-28, *infra*), the fact that the *ACICS* order omits the word "vacatur" or declines to grant all requested relief does not establishe that the Court intended to leave in place the Secretary's de-recognition decision.

Plaintiffs' Complaint thus rests on the unsupported assumption that a court decision finding agency action unlawful—without more—must be understood to leave intact the unlawful agency action. But the D.C. Circuit has repeatedly stated that "vacatur is the normal remedy" for an APA violation. *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014); *see also United Steel v. Mine Safety & Health Admin,*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) ("[t]he ordinary practice is to vacate unlawful agency action"); *AARP v. U.S. Equal Emp't Opportunity Comm'n*, 292 F. Supp. 3d 238, 243 (D.D.C. 2017) ("Courts in this circuit 'have not hesitated to vacate a rule when the agency has not responded to empirical data or to an argument inconsistent with its conclusion'"); *Humane Soc'y of the U.S. v. Kempthorne*, 579 F. Supp. 2d 7, 21 (D.D.C. 2008)

("unsupported agency action normally warrants vacatur"); *Comcast Corp. v. Fed. Commc'ns Comm'n*, 579 F.3d 1, 10 (D.C. Cir. 2009) (Randolph, J., concurring) ("I continue to believe that whenever a reviewing court finds an administrative rule or order unlawful, the Administrative Procedure Act requires the court to vacate the agency's action"). In light of this presumption in favor of vacatur upon remand, the Secretary's construction of this Court's order to do just that cannot, as a matter of law, be arbitrary and capricious.

In assessing, *ex ante*, whether a case is one in which a court should employ the "rare" remand-without-vacatur remedy, courts look to two factors: (1) the seriousness of the deficiencies of the action, that is, how likely it is the agency will be able to justify its decision on remand; and (2) the disruptive consequences of vacatur. *Id; Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993). When a reviewing court evaluates whether a prior decision has remanded with or without vacatur it looks to the prior "decision as a whole." *See, e.g.*, *Select Specialty Hosp. of Atlanta v. Thompson*, 292 F. Supp. 2d 57, 68-69 (D.D.C. 2003)**;** *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 197-198 (D.C. Cir. 2009) (looking to "the nature of the flaw in the agency decision [that was] there under review, to circuit law governing the proper remedy for such flaw, and to the remanding court's analysis of that flaw, viewed in the context of 'the decision as a whole'") (citations omitted). Only where "*all indications*" in a prior decision "point to remand without vacatur" will the prior decision be construed as such. *See id*. at 199 (emphasis added).

Two recent cases employing this analysis demonstrate that the Secretary here correctly understood the *ACICS* decision to have vacated the prior de-recognition of ACICS. In *Select Specialty Hospital of Atlanta v. Thompson*, the court evaluated whether the D.C. Circuit's opinion in a prior case, *Transitional Hospitals Corp. of Louisiana, Inc. ("THC") v. Shalala*, 222 F.3d 1019 (D.C. Cir. 2000), vacated a prior HHS rule or remanded without vacatur. 292 F. Supp. 2d 57, 68-

25

69 (D.D.C. 2003). Because *THC* "did not expressly vacate or decline to vacate the agency action upon remand," the court looked to the "language of the decision as a whole." *Id.* at 69. Employing this test, the court specifically found that the prior decision "did not permit the Secretary's rule to remain in effect upon remand,"  because (1) the language in the *THC* opinion (ordering remand to "make a fresh determination") "suggests that HHS is required to confront the issue anew, rather than [merely] articulate a more comprehensive explanation"; (2) "[t]he *THC* opinion did not address the [*Allied-Signal*] factors courts consider in determining whether or not to vacate an agency rule"; and (3) the *THC* opinion did not "discuss any equitable factors that would require a rule promulgated in violation of the APA to remain in effect while the agency remedied the procedural defects." *Id.* The court also distinguished cases that had remanded without vacatur, noting that those decisions turned on the inadequacy of the agency's explanation and thus did not require it to "make a fresh determination."

A few years later, the D.C. Circuit relied on the test articulated in *Select Specialty Hospital* to evaluate whether a district court remand had vacated an HHS rule. *Heartland Reg'l Med. Ctr.,* 566 F.3d at 197-98. The *Heartland* court likewise looked to the language of the underlying remand opinion, the treatment of the *Allied-Signal* factors, other equitable factors that might require a rule to remain in effect while the agency considered procedural defects, and the reason for setting aside the challenged agency decision. The court concluded that the decision in question had remanded without vacatur "[b]ecause both [*Allied-Signal*] factors *unambiguously* pointed to remand without vacatur, and that is what the opinion, on its face, suggests." *Id.* (emphasis added). The panel explained that the language of the remand "for action consistent with the foregoing opinion" was limited and seemed to indicate an expectation that the agency could cure the defect in its prior action on remand. The court also found that the second *Allied—Signal* factor—the disruptive effect of vacatur—"pointed in the same direction." *Id.* at 198. Finally, it relied on the nature of the action

to support its conclusion: "the agency's failure here adequately to explain why it chose one approach rather than another for one aspect of an otherwise permissible rule" is in contrast to other cases where *vacatur is indicated* because the flaw in the agency decision is in the process employed or "when an agency's explanation of the basis and purpose of its rule is so inadequate that the reviewing court cannot evaluate it." *Id*. at 199.

Unlike what was before the panel in *Heartland*, the *ACICS* decision is not one in which "all indications" "point towards remand without vacatur." Rather, as in *Select Specialty Hospital*, taking the prior decision as a whole supports the Secretary's conclusion that the de-recognition decision had been vacated. The language of the underlying *ACICS* opinion and the nature of the deficiency identified in the agency action all support the Secretary's conclusion. Perhaps most notably, the *ACICS* decision "did not address the factors courts consider in determining whether or not to vacate an agency rule" and did not "discuss any equitable factors that would require a rule promulgated in violation of the APA to remain in effect while the agency remedied the procedural defects." *See Select Specialty Hosp.*, 292 F. Supp. 2d at 69. Moreover, the Court here stated that it was remanding to the Secretary "so that she may consider the evidence in the first instance" and referenced "de novo" review. This language is perfectly analogous to that found to have indicated vacatur in *THC*.

The cases relied upon in *ACICS* further indicate vacatur. As noted above, the Court explicitly relied on decisions that vacated agency action in connection with a remand. This includes *Fuller v. Winter,* which it described as concluding that "where the 'deficiencies [identified by the court] concern[ed] only the flaws in the Secretary's decision-making process' and not 'flaws specific to the substance of the decision that the Secretary reached on the merits,' '[t]he appropriate remedy [ ] [wa]s] to **vacate** the Secretary's decision and remand [the plaintiff]'s petition for further proceedings consistent with th[e] [ ] [o]pinion'"). *ACICS*, 303 F. Supp. 3d at 122 (quoting *Fuller*,

27

538 F. Supp. 2d 179, 193 (D.D.C. 2008) (emphasis added)). The *ACICS* court also relied upon *Jicarilla Apache Nation v. U.S. Department of Interior*, 613 F.3d 1112 (D.C. Cir. 2010), another case involving vacatur of agency action in connection with a remand.[11] The Court also cited 34 C.F.R.§ 602.37(f), which provides for review of new information (pertaining to an accreditor's compliance with recognition criteria) that comes to the Secretary's attention while a decision about the accreditor's recognition "is pending." This reference may further indicate the Court intended to vacate the de-recognition decision, because absent that vacatur the decision about whether to recognize ACICS would arguably not be considered "pending" (and this regulation would be irrelevant).

Application of the *Allied-Signal* and other equitable factors further bolster this conclusion. Unlike the opinion reviewed in *Heartland*, which made clear the flaw in the agency action could be easily corrected on remand, the *ACICS* decision strongly indicates that the Department, after considering the Part II submission on remand, may reach a different result. *See, e.g.*, 303 F. Supp. 3d at 107 ("the Court is unable to conclude that no part of the 36,000-page Part II submission would have affected the Secretary's determination"); *id.* at 113 (evidence that the Secretary did not consider in making the de-recognition decision "appears to contradict the Secretary's conclusions … which formed the basis for the Secretary's determination"). Thus the first *Allied-Signal* factor—likelihood the agency may be able to readily cure a defect in its explanation— counsels in favor of construing the *ACICS* decision as vacating the de-recognition. The second

---

[11] The Complaint alleges that the interim re-recognition was "not in accordance with law" because the Department's regulations provide for an extension "prior to a final decision" "but do not authorize an extension after a final decision." *See* Am. Compl. at ¶¶ 101-02 (referencing 34 C.F.R. § 602.37(h)). But as the Secretary set forth in the interim re-recognition decision, as a result of the *ACICS* ruling, "there [wa]s no final decision on [ACICS's] recognition petition." *Id.* ¶ 103. The cited regulation thus does not demonstrate that the interim re-recognition was unlawful.

*Allied-Signal* factor—the disruptive effect of vacatur—does the same:  Had the *ACICS* court remanded without vacatur, leaving intact the de-recognition of ACICS, ECA schools likely may not have found another accreditor in an abbreviated timeframe, leaving potentially thousands of students with no school to attend. Vacating the de-recognition of *ACICS* offered a logical and significantly less disruptive path by allowing the schools to remain accredited while the Secretary considered additional information, which could (and, in fact did) cause her to reach a different conclusion.

Similarly, the type of deficiency in the agency decision-making identified in *ACICS* (described as "an error of law" and a "process" flaw of "failure to consider relevant evidence") is similar to the "process" deficiency that the *Heartland* court found indicated vacatur. In light of this, and the above factors, the Secretary appropriately considered the previous de-recognition decision as having been vacated while the agency remedied the procedural defect and complied with the Court's command to consider the Part II materials. With nothing unlawful about the Secretary's action, Count I therefore fails to state a claim (even if this Court had jurisdiction) and must be dismissed.[12] And even if this Court disagrees with the Secretary that *ACICS* is best read

---

[12] Plaintiffs' Count I also fails to state a claim because its fundamental premise has been repudiated by the D.C. Circuit. Plaintiffs claim that "any loans issued by the Department for the purposes of attending" Virginia College (among others) during the period after ACICS's accreditation would have lapsed in June 2018 "were unlawful and void *ab initio*." Am. Compl. ¶ 105. As the D.C. Circuit has found, a borrower's claim that she may void her student loan based on her school's loss of accreditation "would frustrate specific federal policies regarding the consequences of losing … accreditation." *Armstrong v. Accrediting Council for Continuing Educ. & Training, Inc.*, 168 F.3d 1362, 1369 (D.C. Cir. 1999), *opinion amended on denial of reh'g*, 177 F.3d 1036 (D.C. Cir. 1999). In reaching its decision the D.C. Circuit noted that it is the Secretary, not students, who enforces the statutory requirements for eligibility, explaining that: "the loss of institutional eligibility … affect[s] directly only the liability of the institution for Federal subsidies … [T]he borrower retains all the rights with respect to the loan repayment that are contained in the terms of the loan agreements," and that loans are not legally unenforceable merely because they were made after the effective date of the loss of institutional eligibility. *Id.* (rejecting claim of mistake of fact regarding institutional accreditation as grounds for rescinding loan agreements) (citing

to have vacated the de-recognition decision, the opinion does not state so explicitly and, given this ambiguity, the Secretary's interpretation cannot be arbitrary and capricious.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint.

Date: September 23, 2019                    Respectfully submitted,

                                            JOSEPH H. HUNT
                                            Assistant Attorney General

                                            MARCIA BERMAN
                                            Assistant Branch Director

                                            */s/  Kate Bailey*
                                            KAREN S. BLOOM
                                            KATE BAILEY
                                            Trial Attorneys
                                            U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L Street NW
                                            Washington, DC 20005
                                            (202) 514-9239 (phone)
                                            (804) 819-7417 (fax)
                                            Email: kate.bailey@usdoj.gov

                                            *Attorneys for Defendants*

---

Institutional Eligibility Under the Higher Education Act of 1965, as amended, Student Assistance General Provisions, 58 Fed. Reg. 13336, 13337 (Mar. 10, 1993)).