**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

MARK PASSUT, <u>et al.</u>,

                Plaintiffs,

    v.

MIGUEL CARDONA, in his official
capacity as the Secretary of the United
States Department of Education,[1] <u>et al.</u>,

                Defendants.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 19-1606 (RBW)

<u>**MEMORANDUM OPINION**</u>

      Mark Passut and Mark Kaiser, the named plaintiffs in this case, bring this putative class

action against the defendants, the United States Department of Education (the "Department") and

Miguel Cardona, in his official capacity as the Secretary of the Department (the "Secretary"),

seeking declaratory and injunctive relief under the Administrative Procedure Act ("APA"),

5 U.S.C. §§ 701–706.  <u>See</u> Amended Complaint for Declaratory and Injunctive Relief ("Am.

Compl.") ¶¶ 1–4, ECF No. 14.  The plaintiffs challenge an April 3, 2018 order by the Secretary

that rendered null and void a December 12, 2016 decision (the "December 2016 decision")

revoking the recognition of the Accrediting Council for Independent Colleges and Schools (the

"Accrediting Council" or "ACICS") as an accrediting agency for postsecondary education

institutions, including the plaintiffs' former school, the defunct Virginia College.  <u>See id.</u>

Currently pending before the Court are the Defendants' Motion to Dismiss ("Defs.' Mot."), ECF

No. 16, and the Plaintiffs' Motion for Class Certification and Supporting Memorandum ("Pls.'

---

[1] Miguel Cardona is the current Secretary of the United States Department of Education, and he is therefore
substituted for Betsy DeVos as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

Mot." or the "plaintiffs' motion for class certification"), ECF No. 2.  Upon careful consideration of the parties' submissions,[2] the Court concludes for the following reasons that it must grant in part and deny as moot in part the defendants' motion to dismiss and deny as moot the plaintiffs' motion for class certification.[3]

## I.      BACKGROUND

The Court previously described the relevant statutory and regulatory framework and factual background of much of this case in detail, see Accrediting Council for Indep. Colls. & Schs. v. DeVos, 303 F. Supp. 3d 77, 86–93 (D.D.C. 2018) (Walton, J.), and therefore will not reiterate that information in full again here.  The Court, however, provides the following procedural posture, which is pertinent to its resolution of the pending motions in this case.

## A.      Accrediting Council for Independent Colleges & Schools v. DeVos

On December 15, 2016, the Accrediting Council initiated an action against the Department pursuant to the APA, challenging the decision of the Secretary to deny the Accrediting Council's petition for continued recognition (the "Accrediting Council's January 2016 Petition") and revoke the Accrediting Council's recognition as an "accrediting agency" for certain institutions of higher education.  See id. at 85.  Although this Court rejected the Accrediting Council's argument that the Secretary violated the APA by failing to discuss all of the criteria to which the Accrediting Council had been found noncompliant, see id. at 122, the

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ("Defs.' Mem."), ECF No. 16; (2) the Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Pls.' Opp'n"), ECF No. 18; (3) the Defendants' Reply Memor[]an[d]um in Support of their Motion to Dismiss ("Defs.' Reply"), ECF No. 20; and (4) the Plaintiffs' [Proposed] Surreply in Opposition to Defendants' Motion to Dismiss ("Pls.' Surreply"), ECF No. 23.

[3] Because the Court concludes for the reasons described below that it lacks jurisdiction to resolve the plaintiffs' pending motion for class certification, the Court also concludes that it must dismiss as moot the plaintiffs' motion for class certification.  See Heard v. U.S. Soc. Sec. Admin., 170 F. Supp. 3d 124, 135 (D.D.C. 2016) (Walton, J.) (denying a motion for class certification as moot in light of the Court's granting of the defendants' motion to dismiss pursuant to Rule 12(b)(1)).

Court nevertheless concluded that the Secretary had violated the APA by "failing to consider [certain information provided by the Accrediting Council in support of its petition for continued recognition (the "Accrediting Council's Part II response")]," id. at 122–23.  Accordingly, "[b]ecause the [Act] requires the Secretary to consider an application de novo," id. at 122; see 20 U.S.C. § 1099b(n)(1) ("The Secretary shall conduct an independent evaluation of the information provided by [the accrediting agency] . . . ."), the Court "[found] it appropriate to remand the case to the Secretary for proceedings consistent with [its] opinion[,]" Accrediting Council, 303 F. Supp. 3d at 122.  The Court noted that it was "unable to conclude that no part of the 36,000-page [Part II response] submissions [not considered by the Secretary] would have affected the Secretary's determination that the Accrediting Council could not come into compliance within twelve months[,]" and that the "submission contained relevant information that was indisputably relevant to assessing those violations."  Id. at 107.  Therefore, the Court "remand[ed the] case to the Secretary for consideration of this evidence."  Id. at 123.

## B.    The Secretary's April 2018 Order

On April 3, 2018, the Secretary issued an order setting forth the Department's procedures on remand from this Court ("the Secretary's April 2018 Order").  See Order at 1–2, Accrediting Council for Ind. Colls. & Schs., U.S. Dep't of Educ., No. 16-44-O, at 2 (Apr. 3, 2018), https://www2.ed.gov/documents/press-releases/acics-docketno-16-44-0.pdf.  The Secretary stated that "[a]s a result of [ ] [this C]ourt's remand, there is no final decision on the recognition petition that [the Accrediting Council had] submitted to the Department[.]"  Id. at 1.  Therefore, the Secretary concluded that "[the Accrediting Council's] status as a federally recognized accrediting agency is restored effective as of December 12, 2016" and "[p]ursuant to 34 C.F.R. § 602.37(h), [the Accrediting Council] will remain in that status until such time as [the

Secretary] reach[es] a final decision on [the Accrediting Council's] January 2016 petition." Id. The Secretary further stated that "[c]onsistent with th[is C]ourt's remand, [the Secretary would] conduct a further review of [the Accrediting Council's] petition." Id. The Secretary ordered that "[the Accrediting Council] may respond to [this Court's Memorandum Opinion] in writing" and "should explain whether and to what extent the Part II submission documents are relevant to its compliance with the regulatory criteria or its ability to come into compliance within [twelve] months." Id. at 2. The Secretary further directed a "[s]enior [d]epartment [o]fficial [to] respond in writing to [the Accrediting Council's] submission[.]" Id.

**C.    The Secretary's Reconsideration of the Accrediting Council's January 2016 Petition**

On September 28, 2018, the Department's Principal Deputy Under Secretary, Diane Auer Jones ("the Deputy Under Secretary"), submitted her renewed recommendation to the Secretary. See Senior Department Official's Response to ACICS at 1, Accrediting Council for Ind. Colls. & Schs., U.S. Dep't of Educ., No. 16-44-O (Sept. 28, 2018), https://www2.ed.gov/about/offices/list/ope/sdoresponsetoacics92818.pdf. The Deputy Under Secretary recommended to the Secretary "that [the Accrediting Council] be granted continued recognition with the condition that it submits a compliance report within [twelve] months demonstrating full compliance with 34 C[.]F[.]R[.] §§ 602.15(a)(2) and (a)(6)." Id. at 76; see also Am. Compl. ¶ 63 (representing that "[o]n September 28, 2018, Jones[, the Department official who was assigned to review the Accrediting Council's 2016 petition,] recommended that [the] Secretary [ ] grant [the Accrediting Council twelve] months of continued recognition to come into full compliance").[4]

---

[4] The plaintiffs allege in passing that the Deputy Under Secretary's renewed recommendation contained errors, including that the Deputy Under Secretary "purported to rely on nine letters of support from other institutional accrediting agencies[,]" that "did not exist[,]" Am. Compl. ¶ 64, and that, when the error was identified, the Deputy . . .

(continued . . .)

On November 21, 2018, the Secretary agreed with the Deputy Under Secretary's

recommendation and "f[ou]nd [the Accrediting Council] noncompliant with §§ 602.15(a)(2)

and 602.15(a)(6)[,]" but "compliant with the remaining [nineteen] criteria subject to additional

reporting requirements detailed in [the Secretary's] analysis."  Accrediting Council for Ind.

Colls. & Schs., U.S. Dep't of Educ., No. 16-44-O, at 8 (Nov. 21, 2018),

https://www2.ed.gov/about/offices/list/ope/final-agency-decision-acics-november-2018.pdf; see

also Am. Compl. ¶ 67.  The Secretary therefore "grant[ed the Accrediting Council] continued

recognition with the condition that it submit compliance reports within [twelve] months

demonstrating full compliance" with §§ 602.15(a)(2) and 602.15(a)(6).  Accrediting Council for

Ind. Colls. & Schs., U.S. Dep't of Educ., No. 16-44-O, at 8 (Nov. 21, 2018),

https://www2.ed.gov/about/offices/list/ope/final-agency-decision-acics-november-2018.pdf; see

also Am. Compl. ¶ 67.

**D.     The Accrediting Council's Review of Virginia College's Accreditation**

The plaintiffs allege that they "attended Virginia College, one of [the Educational

Corporation of America's ("Educational Corporation")] schools, [located] in Richmond[,

Virginia]."  Id. ¶ 78.  According to the plaintiffs, "Virginia College was not able to earn

accreditation from any[ other accrediting agency] besides [the Accrediting Council]."  Id. ¶ 80.

The plaintiffs assert that although "Virginia College and many other [Educational Corporation]

schools sought accreditation from the Accrediting Council for Continuing Education [and]

Training ([']ACCET[']")" after the Secretary denied the Accrediting Council's January 2016

---

(. . . continued)
Under Secretary issued a correction that "grossly mischaracterized and exaggerated the level of support" in other letters that were cited to by the Deputy Under Secretary, id. ¶ 65 (discussing Corrected Senior Department Official's Response to ACICS, Accrediting Council for Ind. Colls. & Schs., U.S. Dep't of Educ., No. 16-44-O (Oct. 15, 2018), https://www2.ed.gov/about/offices/list/ope/correctedresponsefinal.pdf).  However, these alleged errors do not form the basis for either of the two counts of APA violations alleged by the plaintiffs, see Am. Compl. ¶¶ 97–110 (setting forth the plaintiff's two counts), and therefore the Court need not address them.

petition, ACCET "denied accreditation to Virginia College on May 1, 2018, [and] reaffirm[ed] that denial on August 31, [2018,] after [its] appeals panel found that Virginia College failed to meet nineteen of [its] institutional standards."  Id.

According to the plaintiffs, after the Secretary's April 2018 Order, although "[the Accrediting Council] reviewed the findings by ACCET [concluding that Virginia College did not meet ACCET's institutional standards], [it] did not follow ACCET in refusing to accredit Virginia College at that time."  Id. ¶ 81.  The plaintiffs assert that "[i]nstead, [the Accrediting Council] issued a directive to show cause why Virginia College's accreditation should not be withdrawn by suspension at [the Accrediting Council's] August 2018 meeting."  Id.  The plaintiffs further allege that "[a]fter that meeting, [the Accrediting Council] again extended Virginia College's show-cause directive, thereby continuing [Virginia College's] accreditation." Id.

**E.    The Fall 2018 Term**

The plaintiffs allege that the Secretary's April 2018 Order and the Accrediting Council's decisions to "issu[e] a directive to show cause" to Virginia College and to "extend[] Virginia College's show-cause directive[,]" id. ¶ 81, "enabled Virginia College to enroll students, including [the plaintiffs], for the Fall 2018 term—and allowed the Department to issue [student] loans to them[.]"  Id. ¶ 82.  The plaintiffs allege that they "took on thousands of dollars in Department-issued debt to pay the quarterly tuition" but, "[i]f Virginia College had not again been able to claim accredited status, or eligibility for federal student aid, [the plaintiffs] would not have enrolled for the Fall 2018 term."  Id.

The plaintiffs assert that "[d]uring the Fall 2018 term, [they] were completing fieldwork requirements for their degree that were not scheduled to be completed until late December 2018

or January 2019."[5]  Id. ¶ 83.  Kaiser alleges that as of "December 2018[,] . . . the only requirements that [he] had to fulfill to earn his [occupational therapy assistant] degree were two fieldwork placements."  Pls.' Opp'n, Exhibit ("Ex.") 2 ¶ 1 (Declaration of Mark Kaiser ("Kaiser Decl.")).  He further asserts that "[w]hen [Virginia College] announced [that] it was closing on December 5, 2018, [he] was doing fieldwork at Circle Center Adult Day Services in Richmond, Virginia[,]" where "he had started . . . on November 26, 2018[,]" id., Ex. 2 ¶ 2 (Kaiser Decl.), after "ha[ving] previously left a different fieldwork placement because it was not a good fit[,]" id., Ex. 2 ¶ 3 (Kaiser Decl.).  Because "[Kaiser's] program required that [he] do eight weeks at a fieldwork placement in order to earn credit," he was supposed to "complete the fieldwork at Circle Center in mid-January 2019."  Id., Ex. 2 ¶ 4 (Kaiser Decl.).

Passut makes similar allegations.  He asserts that as of "December 2018[,] . . . the only requirements that [he] had to fulfill to earn [his occupational therapy assistant] degree were two fieldwork placements."  Id., Ex. 3 ¶ 1 (Declaration of Mark Passut ("Passut Decl.").  He further alleges that "[w]hen [Virginia College] announced [that] it was closing on December 5, 2018, [he] was doing [his] fieldwork at Lancashire Convalescent and Rehabilitation Center in Kilmarnock, Virginia[,]" and that he "had started at Lancashire on November 12, 2018[,]" id., Ex. 3 ¶ 2 (Passut Decl.), after "ha[ving] previously left a different fieldwork placement because it

---

[5] The Court notes that there appears to be a discrepancy between the plaintiffs' declarations appended to their opposition to the defendants' motion to dismiss and the Amended Complaint regarding the intended end dates of the plaintiffs' fieldwork.  Compare Pls.' Opp'n, Ex. 3 ¶ 4 (Passut Decl.) (attesting that the plaintiffs were supposed to "complete the[ir] fieldwork in mid-January 2019" (emphasis added)); id. Ex. 2 § 4 (Kaiser Decl.) (same), with Am. Compl. ¶ 83 (alleging that "[d]uring the Fall 2018 term, [the plaintiffs] were completing fieldwork requirements for their degree that were not scheduled to be completed until late December 2018 or January 2019" (emphasis added)).  However, regardless of whether the plaintiffs were intended to complete their fieldwork in "late December 2018" or "mid-January 2019[,]" there does not appear to be any dispute that the plaintiffs' fieldwork was scheduled to be completed after the closure of Virginia College on December 18, 2018.  See generally Defs.' Mem.; Pls.' Opp'n; Defs.' Reply.  Accordingly, because the end date of the plaintiffs' fieldwork is only relevant to the plaintiffs' asserted theories of injury and the Court's standing analysis to the extent that the plaintiffs allege that they could not complete their fieldwork prior to Virginia College's closure and therefore took on loans and completed coursework for which they did not receive credit, the Court need not resolve this discrepancy.

was not a good fit[,]" id., Ex. 3 ¶ 3 (Passut Decl.).  According to Passut, "[his] program required that [he] do eight weeks at a fieldwork placement in order to earn credit, which meant [that he] would complete the fieldwork in mid-January 2019."  Id., Ex. 3 ¶ 4 (Passut Decl.).

**F.    The Closure of Virginia College**

The plaintiffs allege that "[o]n December 4, 2018, [the Accrediting Council] withdrew accreditation from Virginia College[,]" Am. Compl. ¶ 84, "[o]n December 5,[ 2018,] Virginia College announced that it would shutter its doors," id. ¶ 85, and "Virginia College's Richmond campus ultimately closed on December 18[, 2018,]" id. ¶ 86.  According to the plaintiffs, they were informed by an email from Kathryn Rainey, "[their] program's Academic Fieldwork Coordinator," id., Ex. 2 ¶ 3 (Kaiser Decl.), that "because [they would] not be finished [with their fieldwork] [ ] by December 18[, 2018,] when [Virginia College would] close, [they would] not be able to finish [their] fieldwork[.]"  Id., Ex. 2 ¶ 6 (Kaiser Decl.) (internal quotations omitted); see also id., Ex. 3 ¶ 7 (Passut Decl.).  The plaintiffs allege that "[b]ut for the closure of Virginia College's Richmond campus on December 18, [2018, they] would have been able to finish their fieldwork, and therefore receive credit for the Fall 2018 term."  Am. Compl. ¶ 87.

**G.    This Case**

On June 3, 2019, the plaintiffs initiated this action, alleging that the Secretary's April 2018 Order violated the APA.  See id. ¶ 1, 102, 104, 111.  On September 23, 2019, the defendants filed their motion to dismiss the plaintiffs' Amended Complaint, see Defs.' Mot. at 1, on the grounds that "the Court lacks jurisdiction and [the p]laintiffs fail to state a plausible claim to relief[,]" Defs.' Mem. at 1, and, on November 20, 2019, the plaintiffs filed their motion for class certification, see Pl.'s Mot. at 1.  These motions are the subjects of this Memorandum Opinion.

## II.   STANDARD OF REVIEW

Federal district courts are courts of limited jurisdiction, Kokkonen v. Guardian Life Ins.

Co. of Am., 511 U.S. 375, 377 (1994), and therefore, "[a] motion for dismissal under [Federal

Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[.]'"

Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v.

Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)).  Thus, the Court is obligated to dismiss a claim if

it "lack[s] [ ] subject[-]matter jurisdiction[.]"  Fed. R. Civ. P. 12(b)(1).  And, because "it is to be

presumed that a cause lies outside [ ] [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at

377, the plaintiff "bears the burden of establishing" that the Court has subject-matter jurisdiction,

Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

In deciding a motion to dismiss based upon lack of subject matter jurisdiction, the Court

"need not limit itself to the allegations of the complaint."  Grand Lodge of the Fraternal Ord. of

Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001).  Rather, the "[C]ourt may consider such

materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has

jurisdiction to hear the case."  Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22

(D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir.

2005).  Additionally, the Court must "assume the truth of all material factual allegations in the

complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all

inferences that can be derived from the facts alleged[.]'"  Am. Nat'l Ins. Co. v. Fed. Deposit Ins.

Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972

(D.C. Cir. 2005)).  However, "the [p]laintiff's factual allegations in the complaint . . . will bear

closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to

state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original) (citation and internal quotation marks omitted).

### III.     ANALYSIS

The defendants move to dismiss the plaintiffs' Amended Complaint for lack of subject-matter jurisdiction, arguing that "[the p]laintiffs lack standing."[6]  Defs.' Reply at 2. Specifically, the defendants argue that (1) the plaintiffs' "alleged injur[ies] . . . [are] not traceable to the Secretary's [April 2018 Order,]" Defs.' Mem. at 1; (2) "even if [the plaintiffs' alleged injuries were] traceable to the Secretary's [April 2018 Order], the sole relief in an APA suit such as this—setting aside the challenged decision—would not impact, let alone redress, the injuries claimed[,]" id.; and (3) the plaintiffs' alleged injuries do not constitute injuries-in-fact because they are either "not actual and concrete" or "self-inflicted[.]"  Defs.' Reply at 15.  In opposition, the plaintiffs argue that they have standing because (1) "[t]hey incurred substantial debt to the Department to attend Virginia College for the Fall 2018 term[—]debt which could not have been issued but for the Department's unlawful reinstatement of [the Accrediting Council in the Secretary's April 2018 Order,]" Pls.' Opp'n at 1; (2) "the Court can provide several remedies sufficient to redress [their] injuries: it can vacate [their] loans, it can enjoin [the d]efendants from continuing to collect on the[ loans], and it can declare that [the loans] are unenforceable[,]" id. at 2; and (3) the "[p]laintiffs[,] . . . through no fault of their own, could not have finished their fieldwork and received credit for the term by the time the school closed[,]" therefore, "whether [the p]laintiffs' injury is properly construed as the financial obligations imposed by their student

---

[6] The defendants argue in the alternative that (1) the Court lacks subject-matter jurisdiction because the plaintiffs "challenge a facially interim decision . . . in contravention of the bedrock principle that an interim decision is not 'final agency action' reviewable under the APA[;]" Defs.' Mem. at 1 (emphasis in original), and (2) the Court should dismiss the plaintiffs' Amended Complaint pursuant to Rule 12(b)(6) because the plaintiffs "fail to plausibly allege that there is anything inherently erroneous, let alone arbitrary and capricious, in the Secretary's decision[;]" id.  Because the Court concludes that the plaintiffs lack standing, it need not address the defendants' other arguments.

loans, or in conjunction with their lost credits, [the p]laintiffs have adequately pleaded [an] injury[-]in[-]fact[,]" id. at 13.  For the reasons that follow, the Court agrees with the defendants that the Court lacks subject-matter jurisdiction because the plaintiffs have not demonstrated Article III standing.

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'"  Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157 (2014) (citing U.S. Const. art. III, § 2).  "In an attempt to give meaning to Article III's case-or-controversy requirement, the courts have developed a series of principles termed 'justiciability doctrines,' among which are standing[,] ripeness, mootness, and the political question doctrine."  Nat'l Treasury Emps. Union v. United States, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (quoting Allen v. Wright, 468 U.S. 737, 750 (1984)).  If a plaintiff lacks Article III standing, a district court

> need not delve into [a plaintiff's] myriad constitutional and statutory claims . . . because a court may not resolve contested questions of law when its jurisdiction is in doubt, as [h]ypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by [the Supreme] Court from the beginning.

Am. Freedom L. Ctr., 106 F. Supp. 3d at 108 (first, third, and fourth alterations in original) (first quoting Crow Creek Sioux Tribe v. Brownlee, 331 F.3d 912, 915 (D.C. Cir. 2003); then quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998)).

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992) (second, third, fourth, and fifth alterations in original) (citations omitted).  "The absence of any one of these three elements defeats standing."  Newdow v. Roberts, 603 F.3d 1002, 1010 (D.C. Cir. 2010).

The Court begins by acknowledging that, as noted by the defendants, see Defs.' Reply at 3, the plaintiffs appear to allege multiple injuries: (1) the plaintiffs' acquisition of student loans to attend Virginia College, which are, according to the plaintiffs, "unlawful and void ab initio" (the "plaintiffs' 'unlawful and void ab initio loans' theory"), Am. Compl. ¶ 105; (2) the "additional debt [incurred by the plaintiffs] for a term in which they received no academic credit" (the "plaintiffs' 'loans but no credit' theory"), id. ¶ 106; and (3) the fact that the plaintiffs "received no credit for the several months of time and work they spent in the Virginia College program during the Fall 2018 term" (the "plaintiffs' 'no credit for time and work' theory"), id. ¶ 88; see also Pls.' Opp'n at 12–13 (referring to the plaintiffs' "lost credits").  The defendants respond that "[e]ach theory of injury has its own standing deficiency, but the theories [also] share two fatal standing defects—neither is redressable by this Court, and neither is fairly traceable to the Secretary's [April 2018 O]rder."  Defs.' Reply at 3.  The Court will address each of the plaintiffs' theories of injury in turn.

**A.      The Plaintiffs' "Unlawful and Void ab Initio Loans" Theory**

The plaintiffs allege that they were injured by the Secretary's April 2018 Order because the Order enabled them to "tak[e] out loans that the Department could not lawfully issue."  Pls.' Opp'n at 12; see Am. Compl. ¶ 105 (alleging that "any loans issued by the Department for the purposes of attending [Virginia College and other schools accredited by the Accrediting Counsel] during the interim recognition period were unlawful and void ab initio").  For the

following reasons, the Court concludes that this theory of injury fails both the injury-in-fact and causation prongs of the standing analysis.

### 1. Injury-in-Fact

The defendants argue that the plaintiffs' loans, even if "unlawful and void <u>ab initio</u>," as the plaintiffs contend, Am. Compl. ¶ 105, do not constitute an "injury-in-fact" for purposes of Article III standing because "[the p]laintiffs do not offer any concrete consequences that came from this alleged injury." Defs.' Reply at 15. The Court agrees with the defendants.

For purposes of Article III standing, an injury must "affect [a plaintiff] in a personal and individual way[,]" <u>Lujan</u>, 504 U.S. at 560 n.1, and "must [ ] be concrete[.]" <u>Spokeo, Inc. v. Robins</u>, __ U.S. __, 136 S. Ct. 1540, 1548 (2016). To be concrete, an injury must be "direct, real, and palpable—not abstact[,]" <u>Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.</u>, 489 F.3d 1279, 1292 (D.C. Cir. 2007), and it also "must be '<u>de facto</u>': that is, it must actually exist[.]" <u>Spokeo</u>, 136 S. Ct. at 1548 (emphasis in original). Furthermore, "Article III standing requires a concrete injury even in the context of a statutory violation." <u>Id.</u> at 1549. Thus, "[w]hen an alleged statutory violation 'result[s] in no harm,' no injury-in-fact exists." <u>Tate v. Nat'l Postal Mail Handlers Union Loc. 305</u>, No. 16-cv-2021, 2018 WL 2538445, at *2 (D.D.C. Apr. 12, 2018) (quoting <u>id.</u> at 1550).

Here, the plaintiffs argue that they have standing because they took on "unlawful and void <u>ab initio</u>" loans "that, but for the Department's illegal conduct, could not have been issued under Title IV." Pl.'s Opp'n at 13; <u>see also</u> Am. Compl. ¶ 82 (alleging that the plaintiffs "took on thousands of dollars in Department-issued debt to pay [Virginia College's] quarterly tuition"). Regarding their loans, the plaintiffs further allege that

> [t]h[is] case . . . raises the questions [ ] whether [the Secretary's April 2018 Order] violated the [APA] and, if so, whether loans that the Department issued for tuition

and other expenses at [Educational Corporation] schools during the interim recognition period are enforceable.

. . .

In the absence of a valid accreditor, the Department's provisional certification for [Education Corporation] schools would have expired on June 12, 2018, eighteen months after the Department's final derecognition decision was entered in December 2016.  Those schools therefore would have become ineligible to receive federal student aid under Title IV [of the Higher Education Act of 1965 ("Title IV")].  20 U.S.C. § 1099(c).  Because the Department's decision to restore [the Accrediting Council's] accreditation was unlawful, schools accredited by [the Accrediting Council] remained ineligible to receive federal student aid, and any loans issued by the Department for the purposes of attending those schools during the interim recognition period were unlawful and void <u>ab initio</u>.

. . .

For the reasons explained above, all loans issued to attend [ ] schools [accredited by the Accrediting Council] during the interim recognition period, including [the plaintiffs'] loans, are therefore unenforceable.

<u>Id.</u> ¶¶ 94, 105, 112.

These allegations by the plaintiffs, that their loans were "unlawful and void <u>ab initio</u>[,]" <u>id.</u> ¶ 105, fail to allege an injury that is sufficiently "concrete[.]"  <u>Spokeo</u>, 136 S. Ct. at 1549. Although the plaintiffs' allegations demonstrate that the loans "affect the plaintiff[s] in a personal and individual way[,]" <u>Lujan</u>, 504 U.S. at 560 n.1; <u>see, e.g.</u>, Am. Compl. ¶ 82 (alleging that the plaintiffs "took on thousands of dollars in Department-issued debt to pay the quarterly tuition"); <u>id.</u> ¶ 89 (alleging that Passut "was forced to pay tuition and expenses out[-]of[-]pocket [at his new school] because he had reached the maximum amount of Department-backed loans for which he was eligible"), this theory of injury rests on the allegedly "unlawful and void <u>ab initio</u>" nature of the loans, <u>see, e.g.</u>, Am. Compl. ¶ 105 (alleging that the loans were "unlawful and void <u>ab initio</u>"); <u>id.</u> ¶¶ 112 (arguing that, because the loans are "unlawful and void <u>ab initio</u>, then they "are [ ] unenforceable").  But, as the defendants correctly note, the plaintiffs have

presented no allegations that the allegedly "illegal" nature of the loans—distinct from the inherent financial obligation associated with the acquisition of any loan—"strip[s] any benefits from [the p]laintiffs[,]" Defs.' Reply at 16, or has any "direct, real, and palpable" effects, Pub. Citizen, 489 F.3d at 1292.  See generally Am. Compl.  Moreover, the plaintiffs' Amended Complaint fails to demonstrate how the allegedly "unlawful and void ab initio" nature of the plaintiffs' loans, see id. ¶ 105, "directly infringe[s] upon any of [the p]laintiff[s' legal] rights[.]" Massey v. Am. Fed. of Gov't Emps., 196 F. Supp. 3d 25, 39 (D.D.C. 2016).  Rather, the plaintiffs' allegations merely establish that the plaintiffs received the benefits that normally accompany the issuance of student loans—namely, the financial ability to attend an educational institution.[7]  See Am. Compl. ¶ 88 (noting "the several months of time and work [that the plaintiffs] spent in the Virginia College program during the Fall 2018 term").

Without any allegation that the allegedly unlawful nature of the plaintiffs' loans resulted in "any concrete consequence[,]" Hancock v. Urban Outfitters, Inc., 830 F.3d 511, 514 (D.C. Cir. 2016), the Court must conclude that the plaintiffs have not demonstrated an injury-in-fact as to this theory of injury.  Accordingly, the Court concludes that the plaintiffs have not demonstrated that their allegedly "unlawful and void ab initio" loans, Am. Compl. ¶ 105, constitute an injury-in-fact.

---

[7] To the extent that the Amended Complaint could be construed to allege that the plaintiffs obtained "unlawful" loans and were, subsequently, unable to receive credit for the coursework for which those loans were paid, the plaintiffs explicitly disavowed any connection between their "unlawful and void ab initio loans" theory of injury and their lack of course credit.  See Pls.' Opp'n at 13 ("[The d]efendants' APA violations injured [the plaintiffs] and other members of the proposed class by enabling the Department to issue debt that, but for the Department's illegal conduct, could not have been issued under Title IV" and this "injury . . . exists whether or not a particular student-borrower received credits and regardless of the particular reason a student-borrower may not have received credit.").  The Court will address the two theories of injury that rest upon the plaintiffs' failure to receive course credit in more detail later in this Memorandum Opinion.  See infra Section III.B (addressing the plaintiffs' "loans but no credit" theory); Section III.C (addressing the plaintiffs' "no credit for time and work" theory).

2. **Causation**

Even if the Court agreed with the plaintiffs that the acquisition of their allegedly unlawful

loans constituted an injury-in-fact, the Court would nonetheless be compelled to conclude that

the plaintiffs have failed to show that this injury is "fairly traceable" to the Secretary's April

2018 Order.[8]  Lujan, 504 U.S. at 560–61.  The plaintiffs explain their allegations of causation as

follows:

> [B]ecause of [the] Secretary['s] April 2018 [Order], [Virginia] College . . . remained accredited past June 12, 2018[—the date on which the temporary extension of accreditation to the Accrediting Council (and, thereby, the validity of the accreditations issued by the Accrediting Council) would have lapsed without the Secretary's April 2018 Order].  After receiving temporary recognition from [the] Secretary [ ], [the Accrediting Council] reviewed the findings by ACCET, but did not follow ACCET in refusing to accredit Virginia College at that time.  Instead, it issued a directive to show cause why Virginia College's accreditation should not be withdrawn by suspension at [the Accrediting Council's] August 2018 meeting.  After that meeting, [the Accrediting Council] again extended Virginia College's show-cause directive, thereby continuing its accreditation.  For many of the areas in which ACCET had found Virginia College non-compliant, [the Accrediting Council] found that the alleged deficiency [did] not result in non-compliance with [the] standards [of the Accrediting Council].
>
> These actions enabled Virginia College to enroll students, including [the plaintiffs] for the Fall 2018 term—and allowed the Department to issue loans to them.  In [the plaintiffs'] cases, they took on thousands of dollars in Department-issued debt to pay the quarterly tuition.  If Virginia College had not again been able to claim accredited status, or eligibility for federal student aid, [the plaintiffs] would not have enrolled for the Fall 2018 term.

Am. Compl. ¶¶ 81–82 (internal quotation marks and footnotes omitted).

To satisfy the causation requirement of Article III standing, a plaintiff "must demonstrate

'a causal connection between the injury and the conduct complained of' such that the 'injury in

---

[8] The Court acknowledges that this argument was not raised by the defendants.  See generally Defs.' Mem. However, "courts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."  Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); Lee's Summit v. Surface Transp. Bd., 231 F.3d 39, 41 (D.C. Cir. 2000) ("When there is doubt about a party's constitutional standing, the court must resolve the doubt, sua sponte if need be.").

fact' is fairly traceable 'to the challenged action of the defendant,' and not the result of 'the independent action of some third party not before the [C]ourt.'" Ctr. for Bio. Diversity v. Envtl. Prot. Agency, 861 F.3d 174, 182 (D.C. Cir. 2017) (quoting Lujan, 504 U.S. at 560).  "[F]air traceability turns on the causal nexus between [an] agency action and the asserted injury[,]" Freedom Republicans, Inc. v. Fed. Election Comm'n, 13 F.3d 412, 418 (D.C. Cir. 1994), and requires a plaintiff to demonstrate "a substantial probability that the substantive agency action . . . created a demonstrable risk, or caused a demonstrable increase in an existing risk, of injury to the particularized interests of the plaintiff[.]" Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 669 (D.C. Cir. 1996).  One such example is that "self-inflicted harm[s are] not fairly traceable to the challenged government conduct."  Grocery Mfrs. Ass'n v. Envtl. Prot. Agency, 693 F.3d 169, 177 (D.C. Cir. 2012); see also Ellis v. Comm'r of Internal Revenue Serv., 67 F. Supp. 3d 325, 336 (D.D.C. 2014) (noting that "it is well-settled in this jurisdiction that self-inflicted injuries—injuries that are substantially caused by the plaintiff's own conduct—sever the causal nexus needed to establish standing").

Here, the plaintiffs' alleged injury—the allegedly "unlawful and void ab initio" loans they acquired from the Department in order to attend Virginia College for the Fall 2018 semester—is a "self-inflicted harm[]" that is "not fairly traceable to the" Secretary's April 2018 Order.  Grocery Mfrs. Ass'n, 693 F.3d at 177.  As the Complaint acknowledges, the plaintiffs themselves obtained the loans that now constitute their alleged injuries.  See Am. Compl. ¶ 82 (acknowledging that the plaintiffs "took on thousands of dollars in Department-issued debt to pay the quarterly tuition"); see also Pls.' Opp'n at 12 (arguing that the "[p]laintiffs adequately allege that they were injured by taking out loans that the Department could not lawfully issue"). Despite the plaintiffs' voluntary actions, they argue that their alleged injury was caused by the

Secretary's April 2018 Order because "[i]f Virginia College had not again been able to claim accredited status, or eligibility for federal student aid, [the plaintiffs] would not have enrolled for the Fall 2018 term[,]" Am. Compl. ¶ 82, and would not have acquired "debt that, but for the Department's illegal conduct [in issuing the April 2018 Order], could not have been issued under Title IV[,]" Pls.' Opp'n at 13.

The Court acknowledges that the Secretary's April 2018 Order is part of the background against which the plaintiffs' alleged injury occurred—as was the Accrediting Council's failure to ensure that Virginia College met accreditation standards, see Am. Compl. ¶ 81; Virginia College's failure to secure accreditation from other accreditors, see id. ¶ 80; Virginia College's failure to make improvements to ensure that it retained accreditation through the Accrediting Council, see id. ¶¶ 81, 84; and the Accrediting Council's two decisions postponing the decision to withdraw accreditation from Virginia College until December 4, 2018, id. ¶ 81.  See Defs.' Reply at 11 (noting that the "[p]laintiffs claim [that] this long chain of events[, culminating in the closure of Virginia College,] was made possible only because the Secretary's [April 2018 O]rder allowed Virginia College to keep its accreditation and to therefore stay open").

However, "the only real effect" of the Secretary's April 2018 Order, which temporarily extended the accreditation of the Accrediting Council, "[wa]s to provide [students] the option" to attend schools accredited by the Accrediting Council for the Fall 2018 term.  Grocery Mfrs. Ass'n, 693 F.3d at 177.  Because of the Secretary's April 2018 Order, the Accrediting Council retained the ability to accredit Virginia College and other schools, see Am. Compl. ¶ 81, which thereby gave the plaintiffs "the option[,]" Grocery Mfrs. Ass'n, 693 F.3d at 177, of attending those schools and acquiring loans to do so, see Am. Compl. ¶ 82.  "To the extent" that the plaintiffs chose "that option voluntarily, any injury they incur[red] as a result is a 'self-inflicted

harm' not fairly traceable to the challenged government conduct." Grocery Mfrs. Ass'n, 693

F.3d at 177 (concluding that the group of plaintiff petroleum refiners and importers had not

demonstrated standing to challenge the agency's approval of the use of a particular gasoline-

ethanol blend because "the only real effect of [the agency's action] is to provide fuel

manufacturers the option to introduce [the] new fuel[ and t]o the extent the petroleum group's

members implement that option voluntarily, any injury they incur as a result is a 'self-inflicted

harm' not fairly traceable to the challenged government conduct"); see also Mirv Holdings, LLC

v. U.S. Gen. Servs. Admin., 454 F. Supp. 3d 33, 44 (D.D.C. 2020) (Walton, J.) (concluding that

"any injury suffered by the plaintiff [wa]s substantially caused by the plaintiff's own conduct,"

when "[t]he plaintiff knew of the [agency's] position that the proposed inclusion of dwelling

units [on a property wa]s inconsistent with the acceptable uses [for this property] . . . , but

nevertheless chose to proceed with [the plaintiff's] development plans, which included the

dwelling units, despite having knowledge regarding the [agency's] position" (internal quotation

marks omitted)).[9]

The plaintiffs' acquisition of their loans to attend Virginia College for the Fall 2018

semester was "clearly independent of agency action[,]" Scahill v. District of Columbia, 271 F.

Supp. 3d 216, 230 (D.D.C. 2017), and therefore "break[s] the causal chain[,]" Petro-Chem

Processing, Inc. v. Envtl. Prot. Agency, 866 F.2d 433, 438 (D.C. Cir. 1989), between the

Secretary's April 2018 Order and the plaintiff's loans.   Accordingly, the Court concludes that, to

---

[9] Moreover, the Court notes that the plaintiffs allege that "[p]rior to [the Secretary's April 2018 Order], [Virginia College's then-President repeatedly said that [the] Secretary [ ] would reverse [the Accrediting Council's] derecognition" and "in or about February 2018, Virginia College held town halls to assure students that it would remain accredited." Am. Compl. ¶ 79.  Therefore, according to the plaintiffs' allegations, by the time the Secretary issued his April 2018 Order, students at Virginia College had access to information that (1) the Accrediting Council's own accreditation; (2) its corresponding ability to issue accreditation to Virginia College; and (3) Virginia College's accreditation were, at minimum, not foregone conclusions.  Accordingly, when the plaintiffs acquired their loans to attend Virginia College for the Fall 2018 semester, they did so against a backdrop of uncertainty as to whether Virginia College would retain its accreditation.

the extent that the plaintiffs allege that they acquired loans that were "unlawful and void <u>ab</u> <u>initio</u>[,]" Am. Compl. ¶ 105, their injury is neither an injury-in-fact nor fairly traceable to the Secretary's April 2018 Order for purposes of Article III standing.

**B.      The Plaintiffs' "Loans Without Credit" Theory**

The Court now turns to the plaintiffs' second theory of injury: the Secretary's April 2018 Order, on which the plaintiffs "relied . . . in deciding to enroll or re-enroll in [Educational Corporation] Schools accredited by [the Accrediting Council,] . . . caused harm to [the plaintiffs] by saddling them with additional debt for a term in which they received no academic credit." Am. Compl. ¶ 106.  The defendants argue that this "injury is not fairly traceable to the Secretary's [April 2018 O]rder . . . because the independent acts of the Accrediting [Council] allowed Virginia College to stay open, thereby causing the harm." Defs.' Reply at 10.  For the following reasons, the Court agrees with the defendants that the plaintiffs have not adequately alleged causation as to the defendants for their "loans without credit" theory of injury.

As the basis for this theory of injury, the plaintiffs advance the following chain of events. The plaintiffs allege that they "relied on" the Secretary's April 2018 Order in "deciding to enroll or re-enroll" at Virginia College for the Fall 2018 term, Am. Compl. ¶ 106, because, without the Order, they would have been unable to obtain federal loans to attend an unaccredited school, <u>see</u> Pls.' Opp'n at 13 (noting that "students must attend an eligible institution to be eligible for Title IV loans").  Then, the plaintiffs allege that because the Secretary's April 2018 Order allowed the Accrediting Council to maintain its accreditation in order for it to, in turn, accredit Virginia College, the plaintiffs took out loans from the Department and attended Virginia College, thereby injuring them by "saddling them with additional debt for a term in which they received no academic credit." Am. Compl. ¶ 106.  And, according to the plaintiffs, the reason they

"received no academic credit" for the Fall 2018 term is that "the closure of Virginia College's Richmond campus on December 18, [2018,]" precluded them from "be[ing] able to finish their fieldwork[.]"  Id. ¶ 87.

    As alleged, this theory of injury stems from the timing of the loss of Virginia College's accredited status and its subsequent closure.  Pursuant to this theory, if Virginia College had closed after the date when the plaintiffs' "fieldwork requirements for their degree [ ] were [ ] scheduled to be completed[,]" id. ¶ 83, the plaintiffs "would have been able to finish their fieldwork, and therefore [would have] receive[d] credit for the Fall 2018 term[,]" id. ¶ 87. Similarly, if Virginia College had closed prior to the Fall 2018 term because it "had not again been able to claim accredited status, or eligibility for federal student aid, [the plaintiffs] would not have enrolled for the Fall 2018 term[,]" id. ¶ 82, and therefore, they would not have incurred the "additional debt[.]"  Id. ¶ 106.

    However, as the defendants correctly note, "it was the Accrediting [Council's] independent action[s] that kept Virginia College accredited until December 4, 2018, when the Accrediting [Council] withdrew Virginia College's accreditation."  Defs.' Reply at 11. According to the Amended Complaint, the Accrediting Council made two decisions that delayed its withdrawal of accreditation from Virginia College until the end of the Fall 2018 term, thereby allowing students, including the plaintiffs, to acquire loans to attend Virginia College for the semester: (1) "[a]fter receiving temporary recognition from [the] Secretary [ ], [the Accrediting Council] reviewed the findings by ACCET . . . [and] issued a directive to show cause why Virginia College's accreditation should not be withdrawn by suspension at [the Accrediting Council's] August 2018 meeting[;]" and (2) at that August 2018 meeting, the Accrediting Council "again extended Virginia College's show-cause directive, thereby continuing [the

College's] accreditation." Am. Compl. ¶ 81. Furthermore, the plaintiffs make no allegation that, "[o]n December 4, 2018, [when the Accrediting Council] withdrew accreditation from Virginia College[,]" the Accrediting Council was not acting upon its own independent decision. Id. ¶ 84.

These independent decisions by the Accrediting Council "sever the causal nexus needed to establish standing." Ellis v. Comm'r of Internal Revenue Serv., 67 F. Supp. 3d 325, 336 (D.D.C. 2014), aff'd, 622 F. App'x 2 (D.C. Cir. 2015). If the Accrediting Council had rescinded Virginia College's accreditation prior to the Fall 2018 term, the plaintiffs' injury, according to their allegations, would not have occurred, because the issuance of loans to attend an unaccredited school would contravene Title IV. See Pls.' Opp'n at 13 (noting that "students must attend an eligible institution to be eligible for Title IV loans"); Am. Compl. ¶ 82 (alleging that "[i]f Virginia College had not again been able to claim accredited status, or eligibility for federal student aid, [the plaintiffs] would not have enrolled for the Fall 2018 term"). Similarly, if the Accrediting Council had decided to wait until after the plaintiffs completed their fieldwork to withdraw Virginia College's accreditation, the plaintiffs would have received their credit, rendering their injury, as alleged, non-existent. See id. ¶ 87 (alleging that "[b]ut for the closure of Virginia College's Richmond campus on December 18, [2018, the plaintiffs] would have been able to finish their fieldwork, and therefore receive credit for the Fall 2018 term"). Accordingly, the independent actions taken by the Accrediting Council sever the requisite causal link between the Secretary's April 2018 Order and the plaintiffs' alleged injury.[10]

---

[10] The Court notes that "harm caused directly by the actions of a third party [may still be] fairly traceable to the defendant[,]" depending upon "the directness of the link between the defendant's challenged action and the alleged injury," and "the incentive structure to which the intervening third party, who directly causes the injury, is responding." Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 679 (D.C. Cir. 1996). Here, however, the plaintiffs have provided no allegations to support the conclusion that the Secretary's April 2018 Order was responsible for the particular date on which Virginia College closed. The plaintiffs make no allegation that these two decisions by the Accrediting Council to delay the rescission of accreditation from Virginia College were "produced by determinative or coercive effect upon the action of" the Department. Bennett v. Spear, 520 U.S. 154, 169 (1997). Rather, the

(continued . . .)

In sum, because the plaintiffs make no allegation that the Secretary's April 2018 Order impacted the Accrediting Council's decision to withdraw Virginia College's accreditation on December 4, 2018, the Court concludes that the plaintiffs have failed to adequately allege that their injury of "additional debt for a term in which they received no academic credit[,]" Am. Compl. ¶ 106, is "fairly traceable" to the Secretary's April 2018 Order, <u>Friends of the Earth, Inc.</u> <u>v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 180 (2000).  Accordingly, the Court finds that the plaintiffs lack Article III standing under their second theory of injury.

**C.      The Plaintiffs' "No Credit for Time and Work" Theory**

Finally, in their Amended Complaint, the plaintiffs appear to allege that they have also been injured by being unable to receive credit for the work they completed at Virginia College during the Fall 2018 semester.  <u>See</u> Am. Compl. ¶ 88 (alleging that the plaintiffs "received no credit for the several months of time and work they spent in the Virginia College program during the Fall 2018 term").  However, as the defendants correctly note, <u>see</u> Defs.' Reply at 3, it appears

---

(. . . continued)
plaintiffs only allege that the Department's temporary extension of the Accrediting Council's accreditation enabled the Accrediting Council to continue operating and, consequently, to continue making such decisions.  <u>See generally</u> Am. Compl. ¶¶ 81–86.  The plaintiffs similarly make no allegation that the Secretary's April 2018 Order incentivized the Accrediting Council to withdraw Virginia College's accreditation on December 4, 2020, or not to withdraw Virginia College's accreditation prior to the Fall 2018 term.  <u>See generally</u> <u>id.</u>  Although "some cases have held that plaintiffs have standing to challenge government action on the basis of injuries caused by regulated third parties where the record presented substantial evidence of a causal relationship between the government policy and the third-party conduct, leaving little doubt as to causation[,]" here the attenuated chain presented by the plaintiffs does not present such "substantial evidence" and leaves the Court with more than a "little doubt as to causation[.]" <u>Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.</u>, 366 F.3d 930, 941 (D.C. Cir. 2004), <u>abrogation on other grounds recognized by</u> <u>Perry Capital LLC v. Mnuchin</u>, 864 F.3d 591, 621 (D.C. Cir. 2017).

The Court further notes that the District of Columbia Circuit "has recognized that a 'federal court may find that a party has standing to challenge government action that permits or authorizes third-party conduct that would otherwise be illegal in the absence of the [g]overnment's action[,]'" <u>Marouf v. Azar</u>, 391 F. Supp. 3d 23, 34 (D.D.C. 2019) (quoting <u>Nat'l Wresting Coaches Ass'n v. Dep't of Educ.</u>, 366 F.3d 930, 940 (D.C. Cir. 2004), <u>abrogation on other grounds recognized by</u> <u>Perry Capital LLC v. Mnuchin</u>, 864 F.3d 591, 621 (D.C. Cir. 2017)).  However, this line of authority is inapposite here because, in this case, the plaintiffs make no allegation that the Accrediting Council's withdrawal of Virginia College's accreditation on December 4, 2018, "would otherwise be illegal" in the absence of the Secretary's April 2018 Order.  <u>Id.</u>

that the plaintiffs essentially abandon this theory of injury in their opposition, instead arguing that their injury comes from their loans, see Pls.' Opp'n at 13 (stating that the "[p]laintiffs have adequately pleaded [an] injury[-]in[-]fact[,]" whether their injury "is properly construed as the financial obligations imposed by their student loans, or [as the loans] in conjunction with their lost credits").

To the extent that the plaintiffs maintain the theory that they were injured by "[r]eceiv[ing] no credit for the several months of time and work they spent in the Virginia College program during the Fall 2018 term[,]" Am. Compl. ¶ 88, this theory fails for the same reasons explained above regarding the plaintiffs' theory that they have "debt for a term in which they received no academic credit[,]" id. ¶ 106; see supra section III.B.  The plaintiffs' failure to receive credit stems from the decision of the Accrediting Council to withdraw Virginia College's accreditation on December 4, 2018, prior to the plaintiffs' completion of their coursework. According to the plaintiffs, they were both scheduled to complete their new fieldwork placements, which was the "only [coursework] needed to . . . earn their degrees[,]" by the end of January at the latest.  Pls.' Opp'n at 19 (arguing that Kaiser's placement "anticipated that [he] would work there into January to fulfill his eight-week requirement" and that "Passut . . . was also scheduled to complete his fieldwork in January 2019").  Accordingly, it is the date on which the Accrediting Council withdrew Virginia College's accreditation—rather than the withdrawal of accreditation itself or any other reason—that prevented the plaintiffs from "finish[ing] their field work and receiv[ing] credit for the term by the time the school closed[.]"  Id. at 13.  If the Accrediting Council had waited to withdraw Virginia College's accreditation until the end of January 2019, the plaintiffs would have received credit for the Fall 2018 term.  See Pls.' Opp'n at 20 (arguing that the "[p]laintiffs' inability to obtain credit for [the] Fall 2018 [term] stemmed

entirely from the abrupt closure of their school").  Similarly, if the Accrediting Council had

withdrawn Virginia College's accreditation prior to the Fall 2018 term, the plaintiffs would not

have enrolled for the Fall 2018 term and would not have expended any "time and work[,]" Am.

Compl. ¶ 106.  See Am. Compl. ¶ 82 (alleging that "[i]f Virginia College had not again been able

to claim accredited status, or eligibility for federal student aid, [the plaintiffs] would not have

enrolled for the Fall 2018 term").  But the plaintiffs present no allegation that the date of

withdrawal was in any measure impacted by the Secretary's April 2018 Order, rather than

independent, discretionary decisions of the Accrediting Council.

 Without such allegations, the Court cannot conclude that the plaintiffs have adequately

alleged that their failure to receive credit for their time and work is "fairly traceable" to the

Secretary's April 2018 Order, Friends of the Earth, 528 U.S. at 180.  Therefore, in accordance

with its above conclusions, the Court determines that the plaintiffs also lack standing to the

extent that they allege that they "received no credit for the . . . time and work they spent in the

Virginia College program during the Fall 2018 term[.]"  Am. Compl. ¶ 88.

## IV. CONCLUSION

 For the foregoing reasons, the Court concludes that it must grant in part and deny as moot

in part the defendants' motion to dismiss.  The Court grants the defendants' motion to the extent

it asserts that the Court lacks jurisdiction over this case because the plaintiffs lack standing to

pursue this matter against the defendants.  The motion is denied as moot in all other respects.

Finally, because the Court lacks jurisdiction to resolve the plaintiffs' pending motion for class

certification, the Court also concludes that it must dismiss as moot the plaintiffs' motion for class

certification.

**SO ORDERED** this 21st day of May, 2021.[11]

REGGIE B. WALTON
United States District Judge

---

[11] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.